F. R. Carter *et al.* Appellees, *vs.* The Cairo, Vincennes and Chicago Railway Company, Appellant.

*Opinion filed April 23, 1909—Rehearing denied June 3, 1909.*

1. Leases—*when lessees of a coal mine may recover substantial damages.* The fact that the breach of a contract between a railroad company and the lessees of a coal mine results in flooding the mine, so that the coal must be abandoned and lost, does not deprive the lessees of the right to recover substantial damages, even though the owner of the fee may also have a right of action against the railroad company.

2. Same—*proper measure of damages for breach of contract to drain mine.* In an action by lessees of a coal mine against a railroad company for breach of the latter's agreement to put in tile, when constructing its road, so that the lessees' mine would be properly drained, the measure of damages is the cost of restoring the mine to the condition it was in before the defendant made the changes causing the injury, if such cost does not exceed the fair cash market value of the leasehold interest; but if the cost exceeds

the value of the leasehold the plaintiffs can only recover the value of such interest.

3. ESTOPPEL,—*when defendant cannot question plaintiffs' rights under lease.* Where a contract between a railroad company and the lessees of a mine recites that the lessees hold a lease of the premises from a certain company, the railroad company, when sued by the lessees for breach of the contract, is in no position to contest the plaintiffs' rights under such lease.

4. INSTRUCTIONS—*when instruction need not negative defense of waiver.* In an action for breach of contract it is not error for an instruction, based upon the pleadings, the plaintiffs' proof and the plaintiffs' theory of the case, to authorize a recovery without negativing the defense of a waiver of the provisions of the contract claimed to have been violated, where the instruction is correct so far as it goes and the question of waiver is fully presented by the defendant's instructions.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

This suit, an action in assumpsit, was brought by appellees, as plaintiffs, in the circuit court of Vermilion county, against appellant, as defendant, to recover for the breach of a contract made and entered into between the parties July 8, 1905. Appellees were at the time the contract was entered into, and had been for some years previously, as lessees, engaged in operating a coal mine by means of a drift or slope near the bottom of a high bluff and extending into the bluff. The bluff was the east side of the hill or elevation from which appellees were mining and taking out coal through said drift or slope to the surface. At the foot of the bluff and lower than the mouth of appellee's mine was a ravine, which ran north and emptied into the Vermilion river. The mouth of the mine was on a level with the coal and about six feet above the bottom of the ravine. The entry from the mouth of the mine had been extended westerly a distance of seven hundred or eight hundred feet, and two

lateral entries were driven in a southerly direction off of the main entry about three hundred feet. The mine was drained by gravity, by means of an open ditch and tile drains carrying the water and emptying it into the ravine at the foot of the bluff below the mouth of the entry. Appellant desired to construct a line of railroad, known as "the Danville and Tilton Extension," in such location with reference to appellees' mine that the mouth of said mine would be closed up by reason of an embankment required to be built, upon which the tracks of the railroad were to be laid. A written agreement was entered into between the appellant and the appellees reciting that each of the parties would be benefited by the construction and operation of the proposed railroad, and in consideration of the payment to appellees by appellant of $1350 in cash it was agreed that appellant should have the right to immediately enter upon the lands which appellees were in possession of as lessees, for the purpose of constructing the railroad; that appellant should provide and maintain a permanent drain, consisting of a ten-inch cast-iron pipe extending from the mouth of the entry to the mine easterly to the limits of the embankment of appellant, and provide and maintain a ten-inch tile drain extending from the east end of said iron pipe drain northerly along the bed of a new ditch to be constructed by appellant to a point opposite Wilkinson's scale house. The contract further provided that the appellant should remove from its right of way the blacksmith shop, scale and scale house, tipple track, brick from the air shaft, and other movable property on said lands belonging to appellees, to some convenient, practicable point to be designated by appellees.

The declaration alleges performance of and compliance with the contract by appellees and charges that appellant has failed to comply with said contract; that it has not provided and maintained the drain it agreed to do, and that in consequence thereof the mine of appellees has been flooded and rendered wholly untenantable and unusable. To this

declaration appellant pleaded the general issue. A trial by jury resulted in a verdict in favor of appellees for $1500, upon which the court, after overruling a motion for a new trial, entered judgment. That judgment has been affirmed by the Appellate Court and a further appeal prosecuted to this court.

REARICK & MEEKS, (HAMLIN, GILLESPIE & FITZGERALD, of counsel,) for appellant.

O. M. JONES, and LINDLEY, PENWELL, & LINDLEY, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees originally leased the mineral rights in the land from the Consolidated Coal Company for a period of one year from October 1, 1903. By the terms of the lease they were to pay the lessor eleven and one-quarter cents per ton, mine run, for all coal taken out. They also agreed to pay the lessor for the months of September to April, inclusive, $15 per month, and for the months of May to August, inclusive, $7.50 per month, whether the actual coal was mined during those periods or not. The Consolidated Coal Company conveyed the land, without reservation, to L. E. Fisher in January, 1904. The lease was delivered to Fisher, and he endorsed thereon, in writing, an extension of it for a period of five years from the date of its expiration. Fisher conveyed the property to the Danville Consumers' Coal Company in October, 1904, and thereafter appellees paid to that corporation the rentals and royalties provided by the lease and continued in possession and operation of the mine. The iron pipe appellant agreed to lay to provide drainage for the mine was required to be laid under and extend through a very high embankment built by appellant. The proof shows appellant laid iron pipe from the mouth of the mine extending eastward about sixty feet, and then built the

embankment of earth and gravel to the height of twenty or more feet over it and extending several feet east of the east end of the iron pipe. The east end of said pipe was not connected with any other pipe or tile but was covered up and filled by the embankment. The building of the embankment obstructed the entry to the mine, so that to operate the mine appellees were obliged to sink a shaft or open an entry from some other point. A short distance north of the mouth of the entry a ravine cut through the bluff in a northeasterly direction and emptied into the ravine that ran at the foot of the bluff below the mouth of the mine that had been obstructed by the railroad embankment. Appellees decided to make an entry from the north side of the bluff to connect with the entry that had been driven from the east side and take their coal out through that entry. By reason of the fact that the pipe leading from the mouth of the old entry was covered up and filled at its east end by the railroad embankment, water could not escape from the mine but accumulated therein and filled it up. When the old entry was reached from the entry driven from the north side of the bluff, water came into the new entry in such quantities that the appellees could not work the mine and were driven out of it. Thereupon they brought this suit.

After the suit was begun appellant made an effort to uncover the east end of the iron pipe and connect it with a tile drain, as it had agreed to do. As to whether it did this or not the evidence was conflicting, but as appellees' evidence fairly tended to show that the appellant did not make such connection as to afford proper drainage, the judgment of the Appellate Court, so far as this court is concerned, is conclusive of that question. It was not denied by appellant that it failed to lay the pipe entirely through and under its embankment and connect it with a tile drain, as agreed in the contract, but it contended on the trial that one of the appellees agreed with it that it need not do so. This was

flatly denied by appellees, and this question also is settled by the judgment of the Appellate Court.

The measure of damages adopted by the court in its instructions to the jury was the cost of restoring the mine to its condition before the injuries complained of, provided such cost did not exceed the fair cash market value of the unexpired term of appellees' leasehold interest, and if the cost of restoration exceeded the value of the unexpired leasehold interest of appellees, then appellees were entitled to recover only the fair cash market value of their leasehold interest. It is conceded by appellant that appellees' proof showed the cost of restoring the mine to its former condition would exceed the market value of the leasehold interest. Appellant offered no proof upon this question, and counsel for appellees stated on the trial that they sought to recover the value of the leasehold interest, as the cost of restoring the mine would exceed the value of that interest.

The appellant contends that if the mine could not be reclaimed and the coal was necessarily abandoned or lost, the right of action was in the owner of the fee and no recovery could be had for substantial damages by the lessee. We think this contention unsound. Appellees had a lease under which they had authority to operate the mine until the first day of October, 1909. The proof abundantly shows that this was a valuable right, and it cannot be the law that they could be deprived of it by the unjustifiable acts of a wrongdoer and have no right to call upon said wrongdoer for compensation. Whether the appellees were obliged to mine coal or not, their lease gave them the right to do so, and appellant could not unlawfully destroy this right without incurring any liability to them. Appellees' lease gave them a fixed tenure, and the proof showed that this had a substantial value. It is unlike a case of a mere licensee or tenant at sufferance. The fact that the landlord might also have a right of action is not conclusive that the tenant has none. A party having a leasehold interest in premises may

have a right of action for such damages as he has sustained, and the owner of the reversionary interest may have a right of action also for damages he may have sustained. *McConnel* v. *Kibbe,* 33 Ill. 175; *Cooper* v *Randall,* 59 id. 317; *Indianapolis, Bloomington and Western Railway Co.* v. *McLaughlin,* 77 id. 275.

We think the rule as to the measure of damages adopted by the trial court was correct. The verdict of $1500 was well within the limits of the testimony as to the value of appellees' interest.

No error was committed by the trial court in the admission of testimony for the purpose of determining the value of the leasehold interest of appellees. John M. Carter and John O'Connell were permitted to testify, over objections of appellant, as to the probable cost of restoring the mine and of the fair cash market value of appellees' interest. It is objected that they did not show themselves qualified to testify to their opinions on these subjects. We think they testified to such experience and knowledge as made them competent witnesses. The weight of their testimony was a question for the jury.

It is also claimed that the court erred in admitting in evidence the record of the deed from the Consolidated Coal Company to Fisher without having first laid a proper foundation therefor. We think the admission of the record of said deed in evidence cannot be complained of as prejudicial to the appellant. Under the issues in this case the title to the land in which appellees had a leasehold interest was only an incidental matter. Fisher recognized the validity of the lease when he owned the land and extended it for a period of five years. The deed from him to the Danville Consumers' Coal Company was introduced in evidence. The proof showed that the Danville Consumers' Coal Company, at the time it acquired title from Fisher, had actual knowledge of the lease and its terms, and after acquiring title collected from appellees the rents and royalties

provided for in said lease. In that state of the proof the deed from the Consolidated Coal Company to Fisher was not indispensable to appellees' right of recovery. Furthermore, it is recited in the contract sued on that appellees held a lease of the premises from the Danville Consumers' Coal Company, and appellant is in no position now to contest appellees' rights under that lease.

The seventh instruction given on behalf of the appellees, after reciting what the material averments of the declaration were, told the jury that if the appellees had proven said averments by the evidence, and also that appellant failed to construct the drain as required by the contract within a reasonable time and that damages thereby resulted to appellees, a verdict should be returned in their favor. The complaint made of this instruction is, that it ignores the defense made by appellant that it was excused from complying with the contract by direction of one of appellees. While the instruction did not negative the defense of waiver, it was based upon the pleadings and appellees' proof and stated their theory of the case. It did not state that a waiver of the performance of the contract could not be considered. So far as the instruction went it stated a correct proposition of law. At appellant's request the court instructed the jury that if John M. Carter, one of appellees, advised the agents of appellant that it was not necessary to put in the pipe and tile as agreed in the contract, then appellees could not complain because this was not done within a reasonable time, and that if, thereafter, appellees notified appellant they desired the drain put in, and appellant did within a reasonable time put the same in in accordance with the requirements of the contract, the verdict should be for appellant. "The instructions of the court as to the law are all to be considered as one charge and the jury are presumed to have considered them in that way. Where one instruction may omit some needed qualification and appear to be misleading when severed from its connection with the other instructions, it may

not be misleading or incorrect when read with the others. If the instructions, taken as a whole, present the law to the jury with substantial correctness it is sufficient." (*Toluca, Marquette and Northern Railway Co.* v. *Haws,* 194 Ill. 92, and authorities there cited.) This is not a case where the omission from an instruction cannot be cured by others, or where, considering all the instructions together, they can be said to be conflicting.

Some other objections are made to instructions given for appellees, but we think they are without merit.

We find no such prejudicial error in the record as would justify a reversal of the judgment, and it is therefore affirmed.

*Judgment affirmed.*