## Best Manufacturing Company, Appellee, v. Peoria Creamery Company, Appellant.

### Gen. No. 7,086.

1. ADJOINING OWNERS—*right of action by tenant against adjacent landowner for injuries from negligent excavation.* Damages are recoverable by a tenant against an adjoining owner for injuries to its business and property from the cracking and settling of the walls of its rented factory building, resulting from excavations on adjacent property, without pleading or proving that the work was inherently dangerous or that the injury was wilfully or wantonly inflicted and despite notice from the adjacent owners to his landlord to protect the foundations of his building, where the excavating was carelessly and negligently done.

2. ADJOINING OWNERS—*sufficiency of evidence of negligence in making excavation on adjacent property.* A verdict for damages for injuries from negligence in excavating on adjacent property is sustained by the evidence in an action based on negligence and not on the general doctrine of lateral support without proof that the work was inherently dangerous or that the injuries were wilfully or wantonly inflicted and despite notice to the owner of the injured building to protect its foundations, where the evidence shows that the soil at the place in question was loose and gravelly and would slip and cave unless properly shored and braced, that the excavation in question was large and deep and made during wet weather, that the braces and shoring were insufficient in size and number, that the dangerous conditions were aggravated by the continued use of a large pile driver and that defendant had knowledge of such facts and that the walls of the adjacent building were cracking and settling as a result of the work but took no additional precautions to avoid the cave-in which followed.

3. INDEPENDENT CONTRACTORS—*when building contractor is not liable as independent contractor for negligence in excavating.* An adjoining owner cannot escape liability for injuries to the occupant of a building on adjacent land resulting from the cracking and settling of the walls of such building caused by negligence in excavating on the adjacent premises, on the ground that the work was done by an independent contractor, where the evidence shows that, although it was originally intended that the contractor should perform the work under a written contract and that he took out the building permit and secured insurance in his own name and had the general direction of the work, defendant corporation reserved and exercised the right to control and direct the work, directed the contractor in hiring and discharging employees, furnished some of the tools and materials used on the work, and through its officers was in daily supervision of the details of the work.

4. DAMAGES—*sufficiency of evidence of damages to going business.* In an action by a tenant against adjoining owners for injury to plaintiff's business and property resulting from negligence in making excavations on property adjacent to the building in which such business was conducted, from which it was compelled to remove its business and machinery, an award- for storage, repairs to machinery, moving machinery and material and resetting machinery and loss on contracts in course of completion, is sustained by undisputed evidence that, prior to injuries complained of, plaintiff was a going concern, doing a large and profitable business and that after the acts in question its factory building was dangerous and could not be occupied and that plaintiff was required to move its machinery and store it, its business ceased temporarily, that during such period its earnings were lost and that it was compelled to lease other premises and move, repair and reinstall its machinery at great expense.

5. COSTS—*taxing costs of additional abstract on appeal against appellant filing incomplete abstract.* Appellee's expenses of preparing and filing an additional abstract of the evidence, made necessary by appellant's incomplete abstract, will be taxed against appellant.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the April term, 1922. Affirmed. Opinion filed August 5, 1922.

MCROBERTS & MORGAN, for appellant.

CLARENCE W. HEYL and HARRY C. HEYL, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, the Best Manufacturing Company, a corporation, began an action of trespass on the case in the circuit court of Peoria county against appellant, the Peoria Creamery Company, a corporation, for damages to the business and personal property of the appellee. There was a trial by jury, and at the close of the evidence on behalf of the appellee and again at the close of all the evidence, a motion was made to direct a verdict in favor of the appellant, which motions were denied. There was a verdict in favor of the appellee for $12,000. Judgment was rendered upon the verdict and this appeal was prosecuted.

The evidence shows that appellee was engaged in the millwright business at 210-214 Walnut street in the City of Peoria, and occupied a three-story, brick building, owned by Solzenstein Brothers, under a written lease with extensions, which expired June 13, 1920. The rent was $150 a month, payable in advance on the first day of the month. The lessee covenanted to make repairs and was relieved from restoring the premises in case of loss due to inevitable accident. The lease provided for immediate forfeiture and entry for nonpayment of rent, and waived notice of forfeiture and demand for possession, but provided that nonpayment of rent should constitute a forcible entry and detainer. The building extended sixty-five feet along the north side of Walnut street and about 120 feet along an eighteen-foot alley which ran north from Walnut street on the east side of the building. There was no cellar or basement under the building.

Appellant purchased the lots lying to the east and immediately across the alley from the premises occupied by the appellee, for the purpose of erecting thereon a new factory and warehouse to be used in its business. The building of appellee was on land higher than that of appellant. Walnut street was on a grade

of forty-five degrees from Washington street to Adams street. Appellant made an excavation on its lot to a depth of twenty-six feet on the alley line opposite the building of appellee, which excavation was about ninety feet in length along the alley, and twenty-six feet deep in the rear along the alley, and two feet deep at Washington street. The slope of the natural soil was illustrated by the dimensions of the excavation, and an excavation of two feet on Washington street on a straight line to the back of the lot made an excavation of twenty-six feet in the rear. The soil in the alley was loose sand and gravel. The excavation was started in October, 1919, and was not completed until February 10, 1920, when the shoring, props and wales installed by appellant to hold the excavation gave way, and the soil of the alley caved in, weakening the building occupied by appellee, causing it to crack in many places, and rendering it unfit for occupancy. For some time before the slide, it is claimed by appellee, that the building was weakening by the continuous use of a pile driver by appellant in breaking the frozen ground, which pounding caused the settling of the building and the slipping of the soil in the alley. Large cracks appeared in the soil in the alley and were filled from time to time by appellant. Prior to the slide, appellee braced the building, and appellant was notified that the shoring, wales and braces were not sufficient. The day before the slide took place, notice was served on appellant of this condition, but nothing was done. The braces put in the building by appellant, after the building commenced to settle and before the slide, it is claimed, deprived the appellee of the use of the floor space. It is also claimed that the use of the pile driver destroyed the use of the drive shaft so the machinery could not be operated, and the building became so dangerous that all of the employees of appellee left the building and refused to work in it, and appellee was obliged to move out and

establish itself in another location. It is also claimed that after the slide, the alley wall became unsafe and was taken down; that many parts of the machinery were broken; that appellee's building in the rear had to be taken down; that additional labor was necessary to finish the contracts; and that the profit of the business was destroyed, and additional rent and expense incurred.

The declaration consisted of one original and three additional counts, all of which, in substance, charge that the appellant wrongfully, unjustly, injuriously, negligently and knowingly excavated the soil to a great depth along the alley line, and negligently failed to exercise reasonable care and diligence in protecting the excavation by props, shoring or supports, to prevent the caving of the soil; and with knowledge that the soil upon which the building stood would cave, appellant kept and maintained the excavation unprotected, and in consequence thereof the soil supporting the building fell into the excavation, the foundation and walls were broken and destroyed, the premises were rendered dangerous and unfit for occupancy, appellee was compelled to abandon the same and discontinue its business, its machinery, tools and material were exposed and damaged, appellee was required to pay out large sums of money in moving and incurred large losses in profits.

As ground for reversal, it is urged that there is neither allegation nor proof that the doing of the work on appellant's premises was inherently dangerous, or that the alleged injury was wilfully or wantonly inflicted; that notice to protect the building was given to the owner on October 31, 1919, and on January 19, 1920; that nothing was done by appellee, or the owner, to support or protect the foundation; that the bottom of the east, or alley wall of the building, extended only about twenty-six inches below the paved surface of the alley; that as it was the duty of the owner of the

building to support his building, and as nothing of the kind was done, and as appellee's cause of action was based upon the law governing the rights and duties of adjacent property owners, the judgment of the trial court should be reversed.

The law applicable to the facts in this case is stated in *City of Quincy v. Jones,* 76 Ill. 231, which is one of the leading cases in this State. It is there held that the owner may use his land in such a reasonable way as his judgment shall dictate, either by making excavation or superstructures thereon, subject, however, to the implied condition that he shall not thereby interfere with his neighbor in the enjoyment of the same right in respect to his adjacent land; that each is entitled to have his soil in its natural state sustained, when necessary, by the lateral support of the adjacent soil of the other, but neither has the right to burden the land of the other with the support of any additional weight, as that would make the land of one servient to that of the other; that where a party has erected a building upon his own land, but very near the land of another, such other person will not be protected in making an excavation on his land so as to injure the buildings out of malice or mere caprice, but such excavation must be consistent with a reasonable and legitimate use of the party's own property, and the right must also be exercised with reasonable skill and care, in view of the character of the building and the nature of the soil, so as to avoid doing unnecessary injury to the building. If injury is sustained to a building in consequence of the withdrawal of the lateral support of the neighboring soil of another, where it has been withdrawn with reasonable skill and care to avoid unnecessary injury, there can be no recovery, but if injury is done the building by the careless and negligent manner in which the soil is withdrawn, the owner will be entitled to recover to the extent of the injury thus occasioned. To the same

effect are *Mamer v. Lussem*, 65 Ill. 484; *Schroeder v. City of Joliet*, 189 Ill. 48; *Barnard v. City of Chicago*, 270 Ill. 27; *Noceto v. Weill*, 166 Ill. App. 162; *Snyder v. Sass*, 174 Ill. App. 205. In *Garvy v. Coughlan*, 92 Ill. App. 582, the owner was held liable for permitting an excavation to remain open too long, so that the water standing in the excavation caused a weakening in the soil.

The declaration is not based upon the doctrine of the lateral support, but each count alleged that the excavating was negligently and carelessly done. It is true that when the work was commenced, the owner of the building was twice notified to protect his walls, but the giving of that notice did not relieve appellant from the duty of using reasonable skill and diligence in the prosecution of the work, and if the work was done in a negligent and unskilful manner and damages resulted, appellant would be liable.

During the time the basement was being excavated appellant knew the soil of the alley consisted of sand and gravel; that it was not closely packed and could not be excavated to any considerable depth without caving in; and the only way to keep it from caving was to shore or prop it up. This was true of the soil of the alley in a state of nature without any additional pressure being placed upon it. Appellant knew that an excavation ninety feet long and twenty-six feet deep was much more likely to cave than was an excavation half that length or half that depth, and that it would take much more bracing to prevent the caving of a large excavation than it would a small one. With this knowledge, appellant began the excavation in the fall of the year, about the time the bad weather would set in, when there was liable to be snow and rain. It was a matter of common knowledge that bad weather would add greatly to the risk of the excavation caving. It does not appear from the evidence what the depth of the excavation was on any particular date,

but the declaration alleges that the appellant permitted the excavation to remain open for thirty days, and the evidence shows the work began in October and was not completed until four months later. The evidence amply sustains the contention that the excavation was not properly braced to prevent it from caving and knowledge of this was brought home to the appellant. The braces were not of sufficient size and number. Cracks appeared in the building and in the surface of the alley some time before the slide took place, the building was braced by appellee, but no additional precautions were taken by appellant to prevent the alley from caving. During a part of the time the ground was frozen, and a pile driver was used to break the frozen ground and to drive down some of the braces. When this pile driver was in operation it shook the earth in the alley as well as the walls of the building, and cracks appeared in the walls, and some of the machinery got out of line so that it could not be operated. When the slide took place it not only carried a large part of the alley into the basement, but it extended into Walnut street and a large section of Walnut street went into the basement. The question of whether the appellant was guilty of the negligence charged was a question of fact for the jury, and from a reading of the evidence we are impressed that the excavating was carelessly and negligently done. In order for appellee to recover it was not necessary to prove that the work was inherently dangerous or that the injury was wilfully and wantonly done. The notice by appellant to protect the wall was of no avail as a defense provided the excavating was carelessly and negligently done. The evidence does not show that any part of the building fell as a result of the slide, but it does show that after the slide the building was dangerous and unfit for use. The action was not for damages to the freehold, but was for damages to the possession in favor of the tenant as provided in sec-

tion 36, ch. 110, of the Statute [Cahill's Ill. St. ch. 110, ¶ 36], as held in *Conklin v. Newman*, 278 Ill. 30. We think the evidence sustains the charge in the declaration that the excavating was carelessly and negligently done.

It is next contended by appellant that the excavation was done by Conrad Iber, an independent contractor, and for this reason appellant is not liable. Appellant had plans and specifications prepared by an architect for the erection of the building. There was a conference between the directors of appellant, the architect and Iber. The directors decided to give the contract to Iber and pay him 8 per cent of the cost of the building, and he was to superintend the erection of the building, furnish the labor and certain equipment. A contract to that effect was prepared by the architect and later taken by Iber to the president of appellant, but this contract was never executed. Just why it was not executed does not appear. The work done by Iber was under an oral contract. Iber was a contractor of this kind of work in the City of Peoria, and immediately assumed charge of the work on this building. The excavation was begun under Iber's direction, and he continued with the work until the basement and first floor were completed, -when he ceased work, there was a settlement between him and appellant, and the balance of the work was completed by other persons. The exact position of Iber in the erection of this building is disputed by the parties. The evidence on behalf of appellee shows that following the making of the original agreement by appellant and Iber, Nelson, the president of appellant, directed Iber to go to Chicago and employ Charles Schwartz as superintendent of the excavation and the steel work. Iber had no acquaintance with Schwartz, but he went to Chicago and employed him as directed. Iber kept track of Schwartz's time, and after the pay roll had been approved by appellant,

Iber drew a check to pay him with appellant's money. Nelson told Iber that he had talked with William Swords, and Swords had given him a price on the excavation which was about as low as could be secured, and he told Iber to give the job of excavating to Swords. The officers of appellant were on the job almost daily, giving directions how the work should be done, and making changes in the plans. This was especially true during the excavation. The evidence on behalf of appellee shows that the pile driver was hired by Nelson, the president of appellant, from Stenstrom, without the advice of Iber. The lumber for the shoring, braces and wales was purchased of Miller Brothers at Nelson's directions. Later Nelson and Miller had a misunderstanding, and Nelson directed Iber to discontinue buying lumber from Miller and to buy it elsewhere. Nelson ordered Schwartz and Lowden discharged, and he told Iber to change the carpenter foreman, not to fire him but just get a new one. Nelson placed a man on the job as timekeeper and to make out the estimates, and he was an employee of appellant. There was a strike during the progress of the work, the men were laid off, and the next day the president's brother and Rice, another officer of appellant, went to Iber and told him to put the men back. The next day Nelson, the president, laid the men off and made a speech to them. The man who did the excavating, the man who did the shoring, the superintendent and foreman were all selected by appellant.

Where a building is injured by an adjoining landowner disturbing the lateral support in erecting a building, and the plans and specifications, though prepared by an independent contractor, are adopted by the owner, and the contractor was compelled to use them in erecting the building, if the negligence causing the injury is not in the workmanship or the materials furnished by the contractor but is in the plans and specifications, and the injury resulted directly

from the acts called for or rendered necessary by the contract and not from collateral acts, the employer of the contractor is liable. *City of Chicago v. Joney*, 60 Ill. 383; *Starr v. Standard-Tilton Milling Co.*, 183 Ill. App. 454. In *Linquist v. Hodges*, 248 Ill. 491, an independent contractor was defined as one who agrees to do a specific piece of work, furnishing and paying his own help and executing the work entirely according to his own ideas, or in accordance with a plan previously furnished him, without being subject to the orders of the person for whom the work is done as to the details thereof. Where the owner of property employs a builder to erect a building thereon, the test as to whether the owner is liable is governed by the power of control over the work. The test is not the exercise of the power, but is the right to exercise the power. It is the possession of the right of control, which puts upon the owner the duty of seeing that the person who stands in that relation does his duty properly. If the owner has retained the rights of directing the mode of doing the work, and the work is not done properly, the owner is responsible. The relation of master and servant does not cease so long as the master reserves any control, or right of control, over the manner or method of doing the work, or the agency by which it is effected. *Hamill v. Territilli*, 195 Ill. App. 174; *Decatur Railway & Light Co. v. Industrial Board*, 276 Ill. 472; *Bristol & Gale Co. v. Industrial Commission*, 292 Ill. 16.

It is true, as claimed by appellant, that Iber took out the building permit in his own name, secured insurance in his own name, and gave notice to the owner of the premises occupied by appellee. The original intention was that the contract should be awarded to Iber, but no contract was signed, and the preponderance of the evidence shows that the original intention was not carried out. During the progress of the excavation, the work was, to a certain extent, under the

direction of Iber, but we do not think he had such full power and control over it as made him an independent contractor, but, on the other hand, the officers of the appellant not only retained power and authority to direct the manner in which the work was done, but the evidence amply sustains the contention of appellee that such power and direction were exercised by the officers of appellant to such an extent that the corporation became liable for the injury sustained.

The principal items of damage claimed by appellee are: Costs of storage $1,497.58; repairs to machinery $275; moving boiler and other machinery $1,000; drayage $75; loss of stock $75; cost of moving dry kiln $150; cost of moving heating plant, taking down pipes, etc., $500; cost of moving material $1,712.75; cost of moving machinery and resetting the same $3,500; loss on contracts in process of completion, including additional labor necessary to complete the same, $3,121.22. It is claimed by appellant that these damages are not sustained by the evidence. In support of this contention it is urged that the lease of appellee on the premises was to expire June 30, 1920; that the rent was $150 per month payable in advance on the first day of the month; that on February 10, 1920, the rent had not been paid for the month of February, and the owner was about to declare a forfeiture; that appellee did not intend to renew the lease but was getting ready to move its factory; that the appellee's business was not prosperous, its plant was old and out of repair, and for these reasons the damages allowed were excessive.

If we were to rely entirely upon the abstract of appellant relative to the damages we might agree with appellant's position on this question. Most of the evidence relative to the damages has been omitted from the abstract, and appellee has filed an additional abstract of forty-six pages devoted largely to this evidence. From a consideration of all this evidence

we cannot agree with the contention of appellant. Complaint is made of several of the items of evidence admitted, but no substantial error was committed in this respect. The evidence as to damages was properly admitted and was competent and not disputed by the appellant. This evidence shows that appellee's plant was a going concern prior to the slide, doing a large business, with a profit of $3,062.28 per year, which it had earned for a period of over eight years. After the slide the building was dangerous, could not be occupied, and appellee was required to move its machinery and store it. The business came to a standstill, and appellee lost, not only its earnings, but was put to great expense in repairing and removing its machinery and in storing it, and later in installing it in a new place. The evidence as to these items of damage not being disputed, was sufficient to justify the verdict and it was not excessive.

Complaint is made of the modification of the ninth, thirteenth and fifteenth instructions, and the refusal to give the seventeenth, eighteenth, nineteenth, twentieth, twenty-second and twenty-third. The modified instructions were not correct as originally submitted, and the court properly modified them. The seventeenth instruction, refused, was incorrect for the reason that it omitted the question of negligence on behalf of the appellant. The eighteenth instruction related to the right of appellee's landlord to declare a forfeiture, and dealt with a question which was not properly an issue in the case, and was properly refused. The nineteenth instruction attempted to state the law relative to the authority of the president of appellant to modify the terms of the contract which the directors of appellant attempted to enter into with Iber. The instruction was not in accordance with the evidence, was not applicable to the facts, and as offered was misleading. The twentieth was not based on the evidence. The twenty-second told the jury

what the evidence did not show, while the twenty-third told the jury that the excavation was done by Iber as an independent contractor. We find no error in the modification or refusal of these instructions.

An additional abstract of forty-six pages has been prepared and filed by the appellee, a motion has been made by the appellee to tax this cost against the appellant, and this motion has been taken with the case. The motion will be allowed and the clerk is instructed to tax the costs of the additional abstract against the appellant.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*