GLADYS FOULON CURTIS and ANNE M. FOULON, Respondents, v. FRUIN-COLNON CONTRACTING COMPANY, a Corporation, Appellant, No. 42761—253 S. W. (2d) 158.

Division One, November 10, 1952.

Motion for Rehearing or to Transfer to Banc Overruled and Opinion Modified in Per Curiam Opinion Filed, December 8, 1952.

*J. D. Leritz* for appellant.

678

*Chelsea O. Inman* and *Charles E. Gray* for respondents.

HYDE, P. J.—Action for trespassing on plaintiffs' land and damaging plaintiffs' building in East St. Louis, Illinois. Plaintiffs had a verdict for $8,000.00, and defendant has appealed from the judgment entered. It is contended that plaintiffs did not make a jury

case; that instructions 1 and 3 were erroneous; that there were erroneous rulings on evidence, and that the verdict was excessive.

Plaintiffs owned a one story five room brick building, about 40 feet long, built about 1905, which faced south on the north side of State Street. It was one of three buildings in the same yard owned by plaintiffs. The front part of this building was used as a doctor's office by Dr. Winning, and the back part and basement as living quarters by Mr. and Mrs. Shumway. Mrs. Shumway took care of the office. In the fall of 1945, defendant began construction of a Sears-Roebuck store with a parking lot west of plaintiffs' property. To build a retaining wall around the parking lot, defendant (without asking plaintiffs' permission) dug a ditch partly on plaintiffs' property (as much as 18 inches), which was less than two feet from the north part of their building and about seven feet from the south part. (The north part of the building had an L about 27½ feet wide which extended about six feet farther west than the south part.) According to plaintiffs' evidence, this ditch was about three feet wide and about four feet deep and was dug along the west side of plaintiffs' building in May 1946. The ditch had no outlet and the soil was sandy and porous. There was considerable rain during the spring and summer and water collected in the ditch and seeped from it into the ground.

There were very heavy rains in August 1946. On August 3rd, the rainfall was 1.50 inches, on August 5th 3.60 inches, on August 14th 3.44 inches, on August 15th 7.71 inches, and on August 16th 3.71 inches. The Weather Bureau records showed 8.48 inches fell during one 24 hour period and that this was the greatest 24 hour rainfall on record at East St. Louis. The records also stated: "Rainfall amounts of 8 inches or more during 24 hour periods do not appear frequently over Illinois, but statewide records show enough occurrences to prevent the event from being considered unusual."

On August 15th, Mrs. Shumway heard a loud popping and cracking of the building and immediately thereafter saw the basement fill with water. The foundation adjacent to the ditch cracked, and the water from the ditch drained into the basement. The side of the building adjacent to the ditch then settled from two to five inches. The basement wall cracked in several places, and the building wall above cracked throughout on the western side. The plaster of the interior was considerably damaged, and the windows and doors on the western side of the building were so out of line that they could not be opened and closed. The floor on the western side pulled away from the walls. Prior to this sinking of the building and the cracking of the foundation, no water had ever been in the basement, and after the ditch was filled by the defendant, no water has since entered the basement. Plaintiffs' evidence also showed that no water entered the basements of their two other buildings with the same back yard but farther away from the ditch. Plaintiffs made temporary repairs by filling

the cracks with cement and trimming some of the windows and doors so that they could be used; and supports for the floors were placed in the basement. Plaintiffs had estimates of $9200.00 and $10,000.00 on the cost of complete repairs. These estimates were based on taking down the west wall and rebuilding it mostly with new brick (which was said to be a more economical method than cleaning the old brick) but it was stated that this would result in a better wall than the old one [161] was before it was damaged. The evidence as to the condition of the building before August 15, 1946 was conflicting.

Defendant says a jury case was not made because there was no substantial evidence that it failed to exercise ordinary care in excavating and maintaining the ditch or that the ditch was the proximate cause of the damage to plaintiffs' building (citing Merlo v. Public Service Co., 381 Ill. 300, 45 N. E. (2d) 665; Illinois Central v. Oswald, 338 Ill. 270, 170 N. E. 247; Goodlander v. Standard Oil Co., 63 Fed. 400; and Milostan v. City of Chicago, 148 Ill. App. 540); and because the evidence established that the sole proximate cause was an Act of God, an unusual and extraordinary rainstorm. (Citing 1 Shearman and Redfield on Negligence 89, Sec. 32; A.L.I. Restatement of Torts, Sec. 451; and Southern Ry. Co. v. Jefferson, 185 Va. 385, 38 S. E. (2d) 334.) The law of Illinois is, of course, the law applicable to this case.

There is no contention in this case, and no evidence to support such a contention, that such an excavation made by defendant on adjoining land would have disturbed plaintiffs' soil in its natural state. Plaintiffs' case is based on both trespass and negligence. Defendant did trespass by digging and maintaining approximately half of the ditch on plaintiffs' land without asking their permission. (52 Am. Jur. 844-848, Sec.'s. 12-14; 63 C.J. 893-894, Sec.'s. 11-12; A.L.I. Restatement of Torts, Sec.'s. 158-159.) Regardless of negligence, defendant is responsible for damages to plaintiffs' property naturally and necessarily resulting from the trespass. (52 Am. Jur. 873-875, Sec.'s. 49-50; 63 C.J. 1049, Sec. 251; Jeffries v. Williams, 5 Exch. 792; 155 Eng. Reprint 347; City of Chicago v. Troy Laundry Co., 162 Fed. 678, 89 C.C.A. 470.) The negligence charged is leaving the entire ditch open for about three months, in soil of this type, without an outlet, when water accumulated in it and seeped away under the foundation of plaintiffs' building. Such conduct has been held to be actionable negligence, even when the excavation was entirely upon the defendant's property, in Garvy v. Coughlan, 92 Ill. App. 582. (See also Best Manufacturing Co. v. Peoria Creamery Co., 226 Ill. App. 60, affirmed 307 Ill. 238, 138 N. E. 684.) The question of proximate cause is usually for the jury (see Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950 and cases cited) and may be shown by circumstantial evidence. (See

Pentecost v. St. Louis Merchants Bridge Terminal R. R. Co., 334 Mo. 572, 66 S. W. (2d) 533 and cases cited.) Upon the facts above stated, and for the reasons hereinafter given, we hold proximate cause (from either the trespass or negligence) was a jury question in this case.

As to the defense of Act of God, Sec. 450, Restatement of Torts gives the rule thus: ''The extraordinary operation of a force of nature, which merely increases or accelerates harm to another which would otherwise have resulted from the actor's negligent conduct, does not prevent the actor from being liable for such harm.'' The following example is given, which is appropriate in this case: ''The A Coal Company deposits on the banks of a mountain stream mine refuse, so close to the water that it is likely to be carried down the stream and deposited upon lower riparian lands by the normal spring and autumn freshets. A cloudburst causes an extraordinary flood which carries the refuse with extraordinary speed and in extraordinary volume upon the land of B. The negligent piling of the mine refuse is the legal cause of the entire harm done to B's land.''

Assuming the excessive rainfall in this case as an Act of God, the law of Illinois (which apparently goes beyond the rule of Sec. 451, Restatement of Torts) is stated in Wald v. Pittsburgh, C.C. & St. L. R. Co., 162 Ill. 545, 551, 44 N.E. 888, 889. In that case, a passenger's baggage was lost in the famous Johnstown flood (held by the Court to be an Act of God) and it was held the carrier would be liable if it was negligent in delaying his baggage. In holding there was a jury case, the Court said: ''A loss or injury is due to the act of God, when it is occasioned exclusively by natural causes such as could not be prevented by human care, skill and foresight; [162] and where property, committed to a common carrier, is brought by the negligence of the carrier under the operation of natural causes that work its destruction, or is, by the negligence of the carrier, exposed to such cause of loss, the carrier is responsible. 'It is universally agreed, that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the act of God, * * * the defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage.' (1 Shearman & Redfield on Negligence, 4th Edition, Sec. 39.) The doctrine is thus clearly stated by the Supreme Court of Missouri in Wolf v. American Express Co., 43 Mo. 421: 'The act of God which excuses the carrier must not only be the proximate cause of the loss, but the better opinion is that it must be the sole cause. And where the loss is caused by the act of God, if the negligence of the carrier mingles with it as an active and cooperative cause, he is still responsible.' '' (See also Kennedy v. Union Electric Co., 358 Mo. 504, 216 S. W.

(2d) 756; Sandy v. The Lake Street Elevated R. R. Co., 235 Ill. 194, 85 N. E. 300; The Providence-Washington Ins. Co. v. The Western Union Telegraph Co., 247 Ill. 84, 93 N. E. 134.)

Our conclusion is that it was a jury question as to whether defendant's conduct directly contributed to cause the damage to plaintiffs' building so that the excessive rainfall was not the sole cause thereof but only increased or accelerated the harm to it. We think this is true because the evidence shows that no water from this rainfall got into the basements of plaintiffs' two other buildings in the same yard and because no water ever got into the basement of plaintiffs' damaged building after the ditch was filled. We· think the jury could reasonably infer from the facts in evidence, and plaintiffs' expert testimony hereinafter referred to, that digging this ditch so close to plaintiffs' building and leaving it open to catch rain all summer was a concurring legal cause, with the heavy August rainfall, of the damage to it. We, therefore, hold that the plaintiffs made a case for the jury on defendant's trespass and negligence causing their damage.

Defendant's contention as to instruction No. 1 is that there was no evidence to support the findings it required. Defendant says: "It authorized recovery for plaintiffs upon the jury finding that water accumulated in the ditch, seeped into the ground, entered the basement and under the foundation of plaintiffs' building and weakened the west wall of the building." Defendant argues that these findings could not be made by the jury without resorting to conjecture. We have found there was circumstantial evidence and expert testimony sufficient to support these findings and have ruled these matters against defendant in holding that plaintiff made a jury case.

Defendant makes the following contentions concerning the rulings on evidence.

First: "It was error for the Court to permit witness Humphries, over defendant's objection, to testify to plaintiffs' hypothetical question that in his opinion the settlement in plaintiffs' property was caused by the ditch and water getting in the ditch."

Plaintiffs' witness Humphries had made an inspection of the building, soon after it was damaged in the summer or early fall of 1946. He was an East St. Louis builder of 45 years experience, familiar with the building since it was built. He described the damage and made an estimate of what it would cost to replace the building as it was before the damage. He was asked if he had formed an opinion as to the cause of the settlement but upon defendant's objection was not permitted to answer, the Court ruling that the facts must be hypothesized to him. The following hypothesization was then made to him: "Q. Well, we will assume that there was an excavation next to the west wall of the building and that that ex-

cavation was made about even with the property line of Mrs. Curtis' property and that about four or five inches of it extended over on her property . . . . Well, assume further that this excavation stayed open for about three or four months and that there was a heavy rain and water [163] got into the basement of Mrs Curtis' building to a depth of four or five feet; . . . . And assume that before that time water did not get into the basement . . . . Well, then, taking the facts that I have given you, I will ask you to state whether or not the excavation and the water getting into it and into the basement next to the excavation caused the settlement? A. There is no question in my mind that that occurred. Q. That is your opinion? A. Yes.''

This question was asked in a deposition and some parts of it were ruled out at the trial on defendant's objection. Defendant now says that the question did not contain sufficient facts to enable anyone to form an opinion (although no further facts were suggested when defendant's counsel was asked to do so; see Morton v. St. Louis-S.F.R.Co., 323 Mo. 929, 20 S. W. (2d) 34); and that the answer was merely conjecture. However, this contention overlooks the fact that the witness had made a personal inspection and was basing his opinion partly on his own knowledge of the conditions, which he described. ''It has long been settled that an expert witness may base a competent opinion upon matters within his personal knowledge or observation, or upon competent evidence in the case or upon both.'' (Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S. W. (2d) 780; See also DeDonato v. Wells, 328 Mo. 448, 41 S. W. (2d) 184; Kennedy v. Union Electric Co., supra, 216 S. W. (2d), l.c. 760; Cruce v. Gulf, M. & O. R. Co., 361 Mo. 1138, 238 S. W. (2d), 674.) Under these circumstances, we think the opinion of this witness did have probative value and hold that the Court did not err in permitting him to answer.

■ Second: ''It was error for the Court to sustain plaintiffs' objection to defendant's question submitted to witness Degenhardt, that since there had been no change in the condition of the building for four or five years, whether future changes should be expected.''

Plaintiffs' witness Degenhardt examined the building in the fall of 1950. It was agreed at the trial that there had been no change in the condition of the building between its settling in August 1946 and the time of his inspection. The Court sustained plaintiffs' objection to defendant's question as to whether there was ''reason to anticipate that there will be any change in the future'' on the ground stated by the Court ''that future damages are not within the scope of the issues raised by the pleadings''; and that under the parties' agreement ''we go back entirely and solely and only to the conditions that existed in 1946.'' The trial court has dis-

cretion in limiting cross-examination and we hold that no abuse of this discretion is shown.

■ Third: "It was error for the Court to sustain plaintiffs' objection to defendant interrogating witness Degenhardt as to whether the ditch, 39 inches deep, could disturb the foundation of plaintiffs' building, 54 inches deep."

Not only did this question fail to include other pertinent facts upon which plaintiffs relied (such as leaving the ditch open, catching and holding water which had to seep away, character of the soil, etc.) but defendant is not in a position to claim error in this ruling because defendant got the Court on its objection to exclude any opinion by Degenhardt as an expert, which was prejudicial to plaintiffs. The Court's ruling was that to be consistent he would not permit defendant to get an opinion from Degenhardt. We think the issue of cause from the conditions shown was a proper matter for expert testimony and that Degenhardt was qualified as a builder with long experience repairing buildings damaged by sinking. (See Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S. W. (2d) 601; Cole v. Uhlmann Grain. Co., 340 Mo. 277, 100 S. W. (2d) 311; Golden v. National Utilities Co., 356 Mo. 84, 201 S. W. (2d) 292.) Our view is that Degenhardt should have been permitted to give his opinion in answer to the question plaintiffs asked and that refusal to permit him to give his opinion was error against plaintiffs and not against defendant.

■ Fourth: "It was error for the Court to sustain plaintiffs' objection to defendant's interrogation of witness Cunliff as to whether, from his inspection of the [164] building, in his opinion the building was in 'serious difficulty' prior to August, 1946."

"Serious difficulty" was properly ruled out as too general, which was the objection made. Defendant's witness Cunliff was permitted to describe the conditions he found which he said indicated the building was in bad condition in specifically stated respects prior to August, 1946. We find nothing prejudicial in the Court's ruling on "serious difficulty."

■ Defendant's two final contentions will be considered together; namely, that the verdict is excessive and that it was error to give instruction No. 3 on the measure of damages. We think that these contentions must be sustained and that the failure to give the jury the proper measure of damages was the cause of an excessive verdict under the evidence. Instruction No. 3 told the jury that "in determining the amount of actual damages, if any, which you may award the plaintiffs, you may take into consideration the reasonable value of the repairs necessary to restore plaintiffs' building to a condition as good as it was in immediately prior to the damage as shown by the evidence." This was the only instruction on the measure of damages and under the evidence it was inadequate and misleading.

The general rule is that the measure of damages to real estate is the difference in the value of the land before and after the injury by trespass or negligence. However, where damaged land or a building thereon can be restored to its former condition, at a cost *less* than the diminution in value, the cost of restoration may be recovered. Thus this restoration rule of recovery is applicable only to cases where the cost of restoration is *less* than the difference in the value of the land before and after the injury and can never apply in any case where the cost of restoration is greater than the value of the land or building. (63 C.J. 1049-1051, Sec's. 251-252; 25 C.J.S. 603, Sec. 84; 15 Am. Jur. 518, Sec. 109, pp. 522-524, Sec's. 112-113; 52 Am. Jur. 874, Sec. 49; Annotation 7 A.L.R. 294.) These rules are stated, as the law of Illinois, in cases upon which plaintiffs rely.

Thus in Swanson v. Nelson, 127 Ill. App. 144, l.c. 149, it is said: "In our opinion the primary and logical rule is that the cost of restoration or repair is to be considered the measure of damages in cases of injuries to real property. This makes the damages conform to the general theory of the law that they are to be indemnity or compensation. But it frequently happens that an injury or trespass to real property may be in a certain sense irreparable. The condition of things before the trespass was committed or the injury done cannot be restored at all, or can be restored only at a very great and disproportionate expense. In either of these cases another measure of damages is properly adopted by the courts, namely, the difference in market value of the property before and after the act complained of. The result of this reasonable view which has been taken by almost all courts of last resort where they have had occasion to pass on the matter has been to establish a rule that *makes the measure of damages, in cases of injury to real estate, the cost of restoration or the difference in market value, as one or the other is the less amount."* (Our italics.) This statement of the rule was quoted and approved in the more recent case of Clark v. Public Service Co., 278 Ill. App. 426, in which the application of the rules for determining the measure of damages are fully discussed. Likewise, in Donk Bros. Coal & Coke Co. v. Slata, 133 Ill. App. 280, the following statement from a New York case was approved: "The rule seems to be that, when the reasonable cost of repairing the injury, or in this case, the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages, the rule of avoidable consequences requiring that the plaintiff shall diminish the loss as far as possible." Donk Bros. Coal & Coke Co. v. Novero, [165] 135

Ill. App. 633, also cited by plaintiffs, followed the Slata case as authority for the measure of damages applied. While it does not so completely state these rules, it was a case in which the cost of repairs was small and these limitations on the rule apparently were not involved. The broad statements in FitzSimons & Connell Co. v. Braun & Fitts, 199 Ill. 390, 65 N. E. 249, were criticized in Peck v. Chicago Rys. Co., 270 Ill. 34, 110 N. E. 414; see also Carter v. Cairo, V. & C. R. Co., 240 Ill. 152, 88 N. E. 493, where cost of restoration exceeded value of property. We, therefore, conclude that the Illinois law is in accord with the rules generally established throughout the country as stated in the above quotations.

The trouble here is that plaintiffs had no evidence as to the value of their building and, likewise, none as to the depreciation in value caused by the injuries to it. The only evidence on this was the testimony of two witnesses of defendant. One (Cunliff) estimated the value of the land and the building at the time he inspected it in 1949 as between $6000.00 and $7000.00. His estimate of the amount it had depreciated as a result of the damage was about $1000.00. The other (Faust) estimated the value of the land and building as $9165.00. This was on the basis of $125.00 per front foot for the land and $5000.00 for the building. He said the building would have been worth $1000.00 more before it was damaged in 1946. In this state of the record, there is no evidence to support the verdict and judgment of $8000.00. Plaintiffs say that the case was tried by both parties on the theory that the measure of damages was the cost of repairs. However, the evidence as to value was admitted on the ground stated by the Court "that you can't do $10,000.00 worth of damage to a $5000.00 piece of property." Plaintiffs had the burden of proof as to the amount of damages and did not have evidence sufficient to support the amount awarded.

The judgment is reversed and the cause remanded. All concur.

On Motion For Rehearing Or To Transfer To The Court en Banc.

██ PER CURIAM:—Plaintiff's motion for rehearing or to transfer to the Court en Banc is overruled. However, since we have ruled there was no error affecting the issues of liability, the third alternative of plaintiff's motion, for a retrial on the issue of damages only, should be sustained. (See Sec. 510.330, RSMo 1949; Lilly v. Boswell, (Mo. Sup.), 242 S. W. (2d) 73, 78, 79; Spalding v. Robertson, 357 Mo. 37, 50, 206 S. W. (2d) 517, 523.) The errors requiring reversal affected only the issue of the amount of damages.

It is, therefore, ordered that the order of remand heretofore made be modified and that the cause be remanded for retrial on the issue of damages only.