Hart B. DONNELL and Edna L. Donnell, his wife, Plaintiffs-Respondents,

v.

VIGUS QUARRIES, INC., a corp., Defendant-Appellant.

No. 35460.

Missouri Court of Appeals, St. Louis District, Division Two.

June 17, 1975.

Motion for Rehearing or Transfer Denied Aug. 7, 1975.

Application to Transfer Denied Sept. 8, 1975.

Paul E. Fitzsimmons, Fitzsimmons & Fitzsimmons, Attys., Inc., Clayton, for defendant-appellant.

Gregory D. O'Shea, St. Louis, for plaintiffs-respondents.

STEWART, Judge.

Defendant appeals from an adverse jury verdict and judgment finding defendant liable for damage to plaintiffs' property in the sum of $27,000.00 as a result of blasting operations in its quarry operations.

Plaintiffs purchased a thirty acre tract of land in Jefferson County for $10,000.00 in 1965. There was an old frame house on the property. The property adjoined the Vigus Quarry. The purchase agreement provided that the seller, Mrs. C. E. Crosby, could live in the frame house, rent free, for the remainder of her life. In 1970 plaintiffs sold off 10 acres for $10,000.00.

In 1966 plaintiffs commenced building. The first structure started was the barn. At that time there was no blasting at the quarry. In 1967 Mr. Donnell noticed some blasting at the quarry. He was concerned over the effect the blasting might have on a home he was planning so he contacted John Weber, an executive of defendant. Mr. Weber assured him that there would be no blast damage to structures on his property which were about a quarter of a mile from the quarry.

Plaintiffs continued with their building program. The home was completed in 1969 and they moved onto the property in that year. In addition to the house and barn they built a workshop and screened pavilion.

In late 1969 or 1970 after experiencing vibrations from blasting, Mr. Donnell observed that his front and rear porches had cracked. Alerted to the cracks in the porches he made a close inspection of the home and the other structures on the property. He found additional cracks in the house, barn, pavilion, and workshop. Most of the cracks were in the foundation area, although others could be found in the fireplaces, the ceilings, basement, and floors of the new buildings. He also noticed cracks in the foundation of the old frame house. He had inspected this house before the blasting operations began. He did not recall seeing any cracks at that time. Mr. Donnell could feel the vibration from the blasts and, at times, the lights would shake. On one occasion when Mr. Donnell was home a blast went off and immediately afterward he noticed a fresh crack in the dining room ceiling.

Because of the nature of the issues raised further facts necessary to their resolution will be set forth where appropriate.

■ Preliminarily we note that blasting is a work which may be lawfully pursued. However, when one intentionally detonates explosives he is absolutely liable for injuries and damages which are the proximate result of such explosions. *Summers v. Tavern Rock Sand Company,* 315 S.W.2d 201 (Mo. 1958).

Defendant first contends that a new trial should have been granted because plaintiffs failed to prove by any substantial evidence that defendant's blasting operations caused any damage to plaintiffs' property.

■ In making our determination we must view the evidence in the light most favorable to the plaintiffs. We must also bear in mind the fact that in cases such as this vibrations and concussions can not be seen and the case must, to a large extent, be based on circumstantial evidence. *Poston v. Clarkson Construction Company,* 401 S.W.2d 522 (Mo.App.1966).

During the period following plaintiffs' construction project (1970–1972) defendant, in the course of its operations, set off 441 blasts in delayed blasting. The largest charge employed was 1612 pounds of explosives, the smallest 300 pounds.

■ Plaintiff, Hart Donnell, actually felt the vibrations from the blasts at his home. It shook the lights. On one occasion he saw a fresh crack in the ceiling immediately after the blast. Two persons who lived in the immediate vicinity of plaintiffs testified that they heard the blasts, felt the vibrations, and that their homes suffered damages as a result of the blast. Evidence of this nature, concerning other structures similarly situated, has been held to be relevant and substantial. *Poston v. Clarkson Construction Company, supra.*

Joseph Brooks, a consulting engineer, testified for plaintiffs. He had a masters degree in civil engineering and had specialized in structural engineering. He testified that the Donnell home was above average in construction. The other buildings on the property were of typical construction. The home is on a rise and the home and other structures were built on hard clay with no fill. Thus drainage settlements and differential settlement were ruled out as causes of the cracking and damages to plaintiffs' structures. The witness inspected the property in April 1972 and again in February 1973. In answer to a hypothetical question he testified that the damage to the plaintiffs' property was caused by defendant's blasting operations.

■ It is apparent that there was sufficient substantial evidence to warrant a finding that the damage to plaintiffs' property was proximately caused by defendant's blasting operations.

Defendant next contends that the verdict of the jury in assessing damages at $27,000.00 was so excessive as to demonstrate bias and prejudice on the part of the jury

■ The measure of damage to property in cases of explosion is the difference in market value of the property before and

after the blasting operation or the cost of restoring the property whichever is the lesser amount. *Curtis v. Fruin-Colnon Contracting Co.,* 363 Mo. 676, 253 S.W.2d 158 (1952). The evidence on behalf of plaintiff as to restoration was to the effect that the structures could not be effectively restored. The plaintiffs gave damage instruction MAI 4.02. The question of the propriety of the instruction was not raised.

■ The evidence with respect to damages came from Loyce Campbell, a local real estate broker, and from plaintiff, Hart Donnell. Mr. Donnell testified, without objection, that, in his opinion, the fair market value of his property prior to blast damage was $90,000.00, that as a result of the blasting the property had decreased in value by $35,000.00.[1] Mr. Campbell testified that he was familiar with local property values, and, in his opinion, the fair market value of plaintiffs' property prior to blasting was $90,000.00, that by reason of the blast damage the fair market value of the property had been decreased by $30,000.00. The testimony would thus have supported a judgment of $30,000.00. The judgment of $27,-000.00 was well within the range of damages which the testimony would support. Under these circumstances the verdict will not be disturbed. *Union Electric Company of Missouri v. Simpson,* 371 S.W.2d 673, 683 (Mo.App.1963).

■ Defendant also contends that the verdict was "excessive and prejudicial" because the plaintiffs' counsel tried to arouse the emotions of the jury against defendant. Having found that verdict was not excessive this contention is without merit. We note in passing that defendant made no objection to any of the seven incidents in argument of which it now complains. These matters were not preserved for our appellate review. *Kallenbach v. Varner,* 502 S.W.2d 446 (Mo.App.1973).

The verdict directing instruction was MAI 31.03:

"Your verdict must be for plaintiffs if you believe: First, defendant intentionally exploded dynamite and ammonium nitrates, and Second, as a direct result of such explosions plaintiffs were damaged."

Defendant contends that this instruction is erroneous because it uses the word *"intentionally"*.

■ Notes on Use under this instruction reads, "1. Omit the word 'intentionally' if this matter is not in issue." As we read this note it is merely an admonition as to the law as it existed in this State. "The Supreme Court has repeatedly said that those facts not in dispute need not be hypothesized" MAI page XLIX. That defendant intentionally set off explosives was an element of plaintiffs' cause of action. It was, however, not in dispute. It was developed in the evidence of plaintiffs and defendant. It is not error for a party to take on the additional burden of requiring the jury to make a finding of an element of the party's claim which has been conceded and thus is not in issue. *Terry v. Sweeney,* 420 S.W.2d 368 (Mo.App.1967).

The judgment of the trial court is affirmed.

SMITH, C. J., and KELLY, J., concur.

---

1. "The owner of property is qualified to give his opinion as to the value of his own property even though he is not a real estate expert." *Esmar v. Zurich Insurance Company,* 485 S.W.2d 417 (Mo.1972).