Woodrow W. MORRIS, Plaintiff, Appellant,

v.

BAGGETT TRANSPORTATION CO., a Corporation, and Roy Springston and Donald Andrew Springston, Defendants, Respondents.

No. 45581.

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1957.

Rehearing Denied Nov. 12, 1957.

Daniel J. Leary, Joplin, Henry H. Fox, Jr., John A. Biersmith, Jr., Madden & Burke, Kansas City, for appellant.

Bert E. Strubinger, St. Louis, William C. Cockrill, Frank C. Mann, Mann, Walter, Powell & Burkart, Springfield, for respondents.

HYDE, Judge.

Action for $75,000 actual damages (first count of the petition) and $75,000 punitive damages (second count) for personal injuries sustained in a collision between motor vehicles. Verdict and judgment was for defendant, and plaintiff has appealed. Plaintiff claims error in instructions given, in refusing certain instructions and in refusing to grant a new trial because of certain incidents at the trial.

The collision occurred on U. S. Highway 60 about two miles east of Mountain View, about 3:40 P.M. on October 11, 1954. Plaintiff, a minister, was riding in a panel truck (going west) with two other minis-

ters, Rev. Evanoff and Rev. Davies, on their way to a meeting of their church in Kansas. Both of his companions were killed in the collision. The panel truck was owned by Rev. Evanoff who was driving. The collision occurred on an "S" curve, the east curve of which was a sharp curve known as "dead man's curve", which was on fairly level ground. The west curve (not so sharp) was at the end of a long gradual downgrade from the west, the low point of the grade being near the middle of the west curve. There was a short straighter section between the two curves and the collision occurred in this straight section. According to plaintiff's own testimony, he first saw defendants' tractor trailer (going east) in the west curve at the low point in the west curve. Plaintiff said the speed of the tractor trailer was about 60 miles per hour, that it was swaying and leaning to his right (its driver's left); that it did not turn with the curve but came straight across the center line on to the left (north) side of the highway. (Plaintiff said: "he straightened the curve and came right into our lane of traffic.") Plaintiff said that the panel truck "remained at all times in the north lane or in the westbound lane of traffic"; that it had been going 40 to 45 miles per hour before arriving at dead man's curve but had slowed to 30 miles per hour to enter it; that the tractor trailer was at least 200 feet away when it started across the center line; and that from two to two and one-half seconds elapsed from the time the tractor trailer started over the center line until the collision occurred. Plaintiff also said that at the point of impact the left side of the panel truck was 30 inches north of the center line of the highway. Plaintiff did say that there were times before reaching dead man's curve when the panel truck was driven 60 miles per or more.

Plaintiff's witness, Highway Patrolman Anderson, arrived at the scene about 4:05 P.M. and found the tractor trailer in the ditch on the north side of the road and the panel truck about in the center of the highway headed east, practically parallel with the tractor trailer, also headed east, with 9 to 10 feet distance between them. He said the pavement was blacktop 21 feet 4 inches wide and the south shoulder was 10 feet wide and soft enough to show tire marks, as there had been rain the night before. He said there were tire marks leaving the pavement on the south shoulder at approximately the break of the curve of dead man's curve, where a side road entered, continuing clear of the pavement for 48 steps; and that these tire tracks then came back on to the highway for 11 steps and terminated near the center of the pavement, where there were three gouged places in the pavement. (He estimated the total length of these tire marks as 175 feet.) He also found skid marks made by dual wheels (such as the trailer had) 58 feet long, leading across the gouged places to where the trailer was stopped, about half the length of these marks being west of the scars in the pavement. He said there were three scars near the center of the pavement, which were apparently made when these vehicles collided: "One was one foot and six inches, and the long one was four foot and eleven inches, and another one was two foot." This testimony of Patrolman Anderson, especially as to the marks on the south shoulder, was corroborated by Highway Patrolman Gooch, called as a witness by defendants.

Defendants' driver, Donald Springston, also called as a witness by plaintiff, said the tractor trailer was equipped with air-brakes in good condition, operated by a foot pedal; that he entered the west curve at 40 to 45 miles per hour, on his right (south) side of the highway and that just as he was through the west curve, going on the straight stretch, he saw the top of the panel truck on dead man's curve, traveling 60 to 65 miles per hour. He said the panel truck was from 70 to 90 yards away when he first saw the top of it and at that time he "couldn't tell but what he was on his right hand side of the road." He said that when he could see where it was it was already going across the road; that they

were then 75 to 80 yards apart; and that he was going 40 miles per hour when he could see all of the panel truck and saw it crossing from the north lane on to the south shoulder. He said the panel truck did not run down his side of the road but crossed right over onto the shoulder; and that it looked like it was out of control and "was going over the embankment on that side." Springston also said it would have required 50, 60 or 65 yards to stop at the speed of 40 miles per hour with the load he had. (64000 lbs. gross.) He said he applied his brakes sufficiently to slow down to 15, 20 or 25 miles per hour but did not make an emergency application until the panel truck started to come back on the highway from the shoulder, at which time the vehicles were about 15 yards apart. He also cut his wheels to the left to try to move out of the way of the panel truck. He estimated that he traveled 30 or 40 yards, after seeing the panel truck go on to the shoulder, before going into emergency. The collision knocked Springston's foot off the brake and knocked the tractor trailer across the road. Defendants had a witness, William E. Cooper, who was following the tractor trailer in his own car with his wife and child. He saw the panel truck leave the pavement, go on the south shoulder, run on the shoulder 30 or 35 yards, and then come back onto the pavement and hit the tractor trailer. He estimated the speed of the panel truck at 65 to 70 miles per hour. He observed the tractor trailer decrease speed and then turn to the left just before it was hit by the panel truck. Reference will be made to other facts later in this opinion.

The only pleaded negligence submitted by plaintiff was: "negligently operating said tractor and trailer unit on the left-hand or wrong side or improper side of the road under the circumstances then and there existing." The submission in Instruction No. 1, given at the request of plaintiff, was: "that, * * *, plaintiff was a passenger in a panel truck being driven west on U. S. Highway 60, near Mountain View, Missouri, and that the defendant Donald Andrew Springston, operated a Diamond T tractor and trailer in an easterly direction at said time and place, and, in the operation thereof, failed to make an adequate and timely brake application on said tractor trailer, and drove the same to his left across the center line of said highway and into said panel truck, and, in so driving and operating said tractor trailer was not exercising the highest degree of care." It should be noted that neither this instruction, nor any other requested by plaintiff, required a finding that the car in which plaintiff was riding was being driven on the right (north) side of the highway.

■ Instruction No. 6, given at the request of defendant, was as follows: "The Court instructs the jury that it is admitted in this case that the panel truck in which plaintiff was riding was traveling in a general westerly direction on the highway, and that the tractor and trailer driven by the defendant, Donald Springston was traveling in a general easterly direction on the highway in such a manner that each was approaching the other, and you are instructed that if you find from the evidence that as the panel truck in which plaintiff was riding approached the point of collision, it went upon and was traveling upon its left or the south side of the center line of the pavement, or upon its left or south shoulder of the highway, or partly upon the left side of the pavement and partly upon the shoulder, and if you shall further find from the evidence that at that time the tractor and trailer being driven by the defendant, Donald Springston, was traveling in its right hand or the south lane of said pavement, and that the said Donald Springston was, at all times herein mentioned, exercising the highest degree of care in the operation of said tractor and trailer, and that because of the position of the panel truck in which plaintiff was riding, traveling upon its left side of the center line of the highway, if you so find, a collision between the two vehicles was imminent, and if you further find from the

evidence that in an effort to avoid such collision the said Donald Springston turned his tractor or tractor and trailer to the left in an effort to avert a collision with the panel truck, if you so find, and that in so doing he was, at all times, in the exercise of the highest degree of care on his part, then plaintiff is not entitled to recover and your verdict should be in favor of all the defendants."

Plaintiff claims error in giving Instruction No. 6, on the ground it authorized a verdict for defendants upon the finding that defendants were free from only one of several grounds of negligence submitted by plaintiff and that it did not hypothesize sufficient facts to show defendants were not negligent, citing Dill v. Dallas County Farmers' Exchange No. 177, Mo.Sup., 267 S.W.2d 677; Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961; Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743. These cases involve very different facts and none of them consider an instruction covering such a situation as that herein involved. Plaintiff says the alleged failure of defendants' driver to make an adequate and timely brake application was the main issue in the case but it certainly was not made so by the pleadings because it was never mentioned therein and the principal evidence concerning it was the testimony of defendants' driver as a witness for plaintiff relating how he did apply the brakes as hereinabove noted. We find no substantial conflicting evidence concerning his application of the brakes and plaintiff points to no evidence showing that he did not apply the brakes, and substantially reduce the speed of the tractor trailer, as he said he did. Furthermore, Instruction No. 1 did not hypothesize facts from which a duty to apply the brakes would arise because it was plaintiff's theory that the panel truck was on the right (north) side of the highway and Instruction No. 1 did not submit a finding as to which side it was on. Of course, if the panel truck remained on the right side of the road, as plaintiff testified, defendants' driver would never

have had any duty to apply his brakes. Moreover, the usual and proper way to submit an issue as to the use of brakes would be to require a finding of negligent failure to obtain the required result, rather than failure to use the mechanical means for accomplishing it, such as a finding that defendants' driver, in the exercise of the highest degree of care, could have safely slackened the speed of his vehicle or stopped the same in time to have avoided a collision and negligently failed to do so. (Stopping and slackening has always been so submitted in humanitarian negligence instructions; see also Alwood v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 868, 872; Raymond, Missouri Instructions 1234.1.) Of course, if a car is approaching another on the wrong side of the road at high speed and emergency decision has to be made as to whether to stop in its path or keep enough momentum to try to get out of its way. As to the pleaded negligence submitted we have held that, at least under emergency circumstances, "a motorist meeting another automobile may turn to the left." Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541 and cases cited 546; Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736; Boatright v. Bruening, 363 Mo. 494, 251 S.W.2d 709. Instruction No. 6 did require a finding that defendants' driver was traveling on his right side of the highway and "was, at all times herein mentioned, exercising the highest degree of care in the operation of said tractor and trailer" which would mean that his conduct did not contribute to cause the emergency. See A.L.I. Restatement of Torts, Sec. 296. It also required a finding as to the improper course of the panel truck from which "a collision between the two vehicles was imminent", which finding with the previously noted finding would show the creation of the emergency without defendants' fault; and further required the finding that in turning to the left to avert a collision under such circumstances, defendants' driver "was, at all times, in the exercise of the highest degree of care." Under the pleadings and the evidence in

this case, we hold Instruction No. 6 was not prejudicially erroneous.

■ Plaintiff also claims error in giving Instruction No. 7, requested by defendants, which was a burden of proof instruction. Plaintiff complains of the part of this instruction saying: "If, therefore, you find the evidence touching the charge of negligence against the defendants, as made in this case and submitted to you in other instructions, does not preponderate in favor of the plaintiff, or is evenly balanced, then and in that case plaintiff is not entitled to recover." Plaintiff says this was improper because the defense of contributory negligence was raised, citing Manar v. Taetz, Mo.App., 109 S.W.2d 721, 723, and cases cited. However, defendants did not submit any defense of contributory negligence in this case as was done in the Manar case. Moreover, the instruction in the Manar case was worded so as to cover all of the issues in the case instead of "the charge of negligence against the defendants, as made in this case." We hold there was no prejudicial error in giving Instruction No. 7

■ Plaintiff also alleges error in the refusal of Instruction No. 4 as offered by him and in the refusal of Instructions A and B. There is nothing in the record to show that Instruction No. 4 was offered by plaintiff in any different form than as given by the Court so there is nothing preserved for review concerning it. Instructions A and B were as follows:

"A. The court instructs the jury that if you find and believe from the evidence that the panel truck in which plaintiff was riding at the time of the accident was being driven by Reverend Evanoff, and that plaintiff had no control, or right of control, over the operation of said truck, then any negligence of the said driver, Reverend Evanoff, if any, cannot be imputed to plaintiff."

"B. The Court instructs the jury that a person may not excuse his conduct on the ground that he acted in an emergency or under the influence of a sudden peril, where the emergency or peril resulted from his own negligence. Therefore, even though you find and believe from the evidence that the panel truck in which plaintiff was riding did cross the center line of the highway and was on, or partly on, the east bound lane thereof, proceeding westward as defendant approached the point of accident, and that defendant was suddenly confronted with an emergency or peril, yet if you further find from the evidence that defendant caused or contributed to such emergency or peril in that he failed to make timely and adequate application of his brakes on said tractor trailor when he first discovered said panel truck was south of the center line, and, that a very careful and prudent person, situated as was defendant Springston, at the time he first discovered said panel truck was south of the center line of said highway, could have avoided such emergency or peril by timely and adequate application of said brakes, then Instruction No. 6 has no application to this case and you should not consider same in arriving at your verdict."

As to Instruction A, we note that Instruction No. 1 authorized a verdict for plaintiff "even though you may also find and believe that Reverend Evanoff was the driver of said panel truck and was also guilty of negligence which contributed to cause such injuries and damage, if any, provided plaintiff was in the exercise of ordinary care for his own safety and was not driving the panel truck." (There was evidence that plaintiff had said he was the driver but defendants abandoned their defense on that basis and also their defense that he was engaged in a joint enterprise with the driver.) The Court also gave Instruction No. 2, at plaintiff's request, which was as follows: "The court instructs the jury that the law does not apportion negligence or damages between persons whose combined negligence produced injuries or damages to another. You are, therefore, instructed that if you should find and be-

lieve that the defendants and Reverend Evanoff (if you find he was the driver of the panel truck mentioned in evidence), by their combined negligence, injured and damaged the plaintiff, then you must allow the full amount of the plaintiff's damages in his action against defendants, and you must not reduce such damages, if any, because of the negligence, if any, of Reverend Evanoff in the driving of said panel truck, if you find he was the driver thereof." Defendants did not plead contributory negligence and it was not submitted as in Gorman v. Franklin, Mo., 117 S.W.2d 289 cited by plaintiff. McGrath v. Meyers, 341 Mo. 412, 107 S.W.2d 792, also cited by plaintiff, considered the requirements of a sole cause instruction in a humanitarian negligence case. We think it was made clear to the jury, by these instructions that negligence of the driver of the panel truck had no bearing on plaintiff's right to recover or the amount of his recovery. Under these circumstances, we hold the refusal of Instruction A was not prejudicial error.

As to Instruction B, the first sentence is correct as an abstract statement of law. However, the second sentence does not properly apply this legal principle, because it seems susceptible of the construction that the emergency was not to be considered if, after being confronted therewith, defendants' driver thereafter "could have avoided such emergency or peril by timely and adequate application of the brakes." That would not be a submission of facts authorizing a finding that "the emergency or peril resulted from his (defendants' driver's) own negligence", because it seems to submit failure to avoid an emergency after it existed rather than negligence in creating it. Although plaintiff alleged defendants' failure to have adequate brakes and "a high and dangerous rate of speed", which could have contributed to cause the emergency, there was no submission of either of these charges of negligence. Furthermore, in any event, it would have been improper to instruct the jury "you should not consider" a given instruction "in arriving at your verdict." We, therefore, hold it was not error to refuse Instruction B.

█ Plaintiff further contends the trial court should have granted a new trial because of two incidents which occurred during the trial, but to which no proper objection was made at the trial, and asks us to reverse and remand because of them. The first relates to conduct of Lee Cooper, called as a witness by plaintiff. It was plaintiff's theory that the tire tracks on the south shoulder, seen by the Highway Patrolmen, had been made by another car which had left the highway and turned over early in the morning of the day when plaintiff was injured. Lee Cooper had seen this car off the Highway when he drove to work about 7:30 A.M. on that day and plaintiff sought to prove by him that the position of this car was near the west end of dead man's curve. However, Lee Cooper testified that this car was on the other side of dead man's curve about an eighth of a mile east of the scene of the later collision. Plaintiff claimed surprise, saying this was a change of his prior statements. As Lee Cooper left the witness stand, he said (apparently directed to plaintiff's counsel who had questioned him): "I want to see you when this is over." No objection was made at the time and no action requested. It is said in plaintiff's brief that none of his counsel heard this statement; but it was heard by the court reporter. An affidavit was also filed with plaintiff's motion for new trial which stated that Lee Cooper made threatening statements concerning plaintiff's counsel outside the courtroom. However, there is nothing to show that the jury heard or knew anything about any of these remarks and the trial judge, who was present and knew about the situation at the trial, was better able to pass on this matter than an appellate court. Certainly it was largely a matter within the discretion of the trial court and, since there is nothing to show abuse of discretion, we overrule plaintiff's contention.

■ The second incident occurred during the argument to the jury by defendants' counsel and appears from the record as follows: "Why they are here not only seeking to recover a sum for actual damages but they are asking you to assess punitive damages and a great sum of money against this boy; and if you will take the instructions of the Court, in order to do it, you have got to convict that boy of manslaughter of those two other people.

"Mr. Jo Gardner: That isn't the proper measure in a civil action.

"Mr. Mann: That is the definition of your instruction on that.

"Mr. Gardner: It is not.

"The Court: Objection overruled.

"Mr. Mann: Yes, sir, that is your definition, what you are seeking to do in this case. And I plead with you under the facts in this case not to send this boy home tonight with that shadow over his life for the rest of his life for something that he was not responsible for * * *". Plaintiff sought punitive damages on the following basis: "If you further find that such operation of said tractor trailer, if so, was in reckless disregard of plaintiff's right to travel in reasonable safety on said highway and constituted wanton conduct on the part of defendant Donald Andrew Springston, then you may also find for plaintiff Woodrow W. Morris and against defendants on the second count of plaintiff's petition." It seems obvious that these remarks were made concerning the issue of punitive damages; and plaintiff has brought up only this one excerpt from the record of the arguments, so we do not have before us what plaintiff's counsel had said on this subject. Plaintiff's present claim is that this improperly injected an issue of criminal law into a civil case "to inflame the jury to an unwarranted sympathy", citing Black v. Lowe, Tex.Civ.App., 123 S.W.2d 955, in which there was no issue of punitive damages. However, no such objection was made at the trial; and, furthermore, since

the jury did not even reach the issue of actual damages, because it found against plaintiff on the issue of liability, we cannot hold there was prejudicial error concerning punitive damages under the circumstances. LeGrand v. U-Drive-It Co., Mo.Sup., 247 S.W.2d 706, 713; Durmeier v. St. Louis County Bus Co., Mo.Sup., 203 S.W.2d 445, 448; Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366 and cases cited 369. This also was largely a matter within the discretion of the trial judge who heard the entire argument of both sides.

The judgment is affirmed.

All concur.