Richard.A. SUMMERS and Mary E. Sum-
mers, Plaintiffs-Appellants,

v.

The TAVERN ROCK SAND COMPANY, a
Corporation, Defendant-Respondent.

No. 46381.

Supreme Court of Missouri,

Division No. 1.

July 14, 1958.

B. Richards Creech, St. Charles, for appellants.

Robert V. Niedner, Niedner & Niedner, St. Charles, John M. Goodwin, Hocker, Goodwin & MacGreevy, St. Louis, for respondent.

VAN OSDOL, Commissioner.

Plaintiffs, Richard A. Summers and Mary E. Summers, husband and wife, instituted this action in three counts against defendant, The Tavern Rock Sand Company, the operator of a quarry approximately three miles east of Augusta in St. Charles County. In Count I, plaintiffs sought recovery of $14,500 for damage to their dwelling and other improvements allegedly due to vibrations and concussions occasioned by defendant in blasting with high explosives in the operation of its quarry. In Count II, plaintiffs prayed for injunctive relief; and in Count III, plaintiffs sought recovery of $25,000 punitive damages. A jury found for defendant on Count I. Upon separate trial of the issues of Count II, the trial court found against plaintiffs and for defendant. The trial court had sustained defendant's motion for a directed verdict as to Count III at the close of plaintiffs' case. Plaintiffs have appealed from the ensuing judgment for defendant on all of the three counts stated.

Plaintiffs-appellants in their brief have stated nineteen points, some of which are divided into subpoints set out in lettered subparagraphs, many of which are general statements of abstract principles of law or mere references to pages of the transcript on appeal. Some of the allegations of error present nothing for appellate review, for example—that the verdict for defendant was a miscarriage of justice, and was against the weight of the evidence. Other points and subpoints are not supported by authorities and others are not developed in the printed argument. Definitely, plaintiffs' brief does not in most respects comply with Supreme Court Rule 1.08, 42 V.A. M.S., Pocket Parts, pp. 3–4. We shall consider the points and argument in support thereof which are sufficiently presented by brief to merit our consideration of them. Generally, these contentions are that the trial court erred in directing a verdict for defendant as to Count III; in the admission and exclusion of evidence; in instructing the jury; and in finding for defendant

on the issues of Count II. The further point is urged that the trial court abused its discretion in determining the qualifications of expert witnesses.

At the outset in reviewing this case, it is helpful to generally state the law applicable here, and it is necessary to notice the factual theories of plaintiffs' case and of defendant's defense as supported by the evidence introduced by the parties respectively.

In this state "blasting is regarded as a work which one may lawfully do, providing he avoids injuring persons or property, and subject to his obligation to pay damages for any injury inflicted by his blasting." Schaefer v. Frazier-Davis Const. Co., Mo.App., 125 S.W.2d 897. And in this state when damage to property is by vibration or concussion from blasting there is an invasion of the premises and liability irrespective of negligence quite as if the blasting had cast rocks or debris thereon. Stocker v. City of Richmond Heights, 235 Mo. App. 277, 132 S.W.2d 1116; Taylor v. Walsh, 193 Mo.App. 516, 186 S.W. 527; Johnson v. Kansas City Terminal R. Co., 182 Mo.App. 349, 170 S.W. 456; Annotation, 20 A.L.R.2d 1372, at pages 1383–1384.

Defendant is engaged in the production of silica sand—"we blast down the sand and crush it and process it, screen and dry it." Defendant's quarry has been in operation since 1896, and is commonly called the "Klondike." Dynamite is used in blasting off an "overburden" of limestone and dirt; then, with the same explosive, the yellow-sand rock formation is penetrated and "blasted down"; and then blasting-down penetrations are made into the white-sand rock formation. Preparatory to blasting, holes are drilled in the rock and sticks of dynamite with primers and attached detonating caps are placed in the holes and are encased in screened sand. The explosive is "set off" electrically.

The west face of defendant's quarry is approximately 3,200 feet, and the east face

is approximately 4,600 feet from plaintiffs' dwelling which is on the "same ridge" to the northwestward of the quarry.

Plaintiffs introduced evidence tending to show that they acquired their property of 22 acres in 1949; the house thereon is of one story; has five rooms with bath; and is of "native rock" construction. More recently plaintiffs have built a 14′ x 22′ concrete-block garage, and a cistern is in progress of construction. Plaintiffs had not noticed any cracks in the walls of their house and garage, or damage to their cistern prior to August 20, 1955. On that date they saw a crack in the front basement wall. Plaintiff husband "pointed up" the crack with mortar, and on September 20th again noticed there was a "slight hairline" crack where he had pressed in the mortar. In later weeks plaintiffs noticed other cracks in the basement wall, in the plastered walls of the bathroom, in the exterior walls of the house and garage, and also observed the cedar paneling and walnut trim in the living quarters were sprung out of alignment.

There was substantial evidence that vibrations and concussions, appreciable to the senses, were heard and felt at and in plaintiffs' dwelling which were coincident with blasting at defendant's quarry. Plaintiff wife testified that "a lot of times I would sit on the couch in the living room and they would set off a blast at the quarry and the house would shake and the furniture would shake, the dishes would rattle and your feet would vibrate from the floor."

Defendant-respondent makes no contention herein that plaintiffs did not make out a case for the jury on the issue of defendant's liability for actual damages as claimed in Count I; but defendant introduced evidence tending to show that plaintiffs' dwelling was built by one Riek, who (partially) completed the building in the years 1933–35; Riek had never designed or built a house and he had no plans and specifications—"just a mental picture." The

foundation was not level—it followed the contour of the ground. The footing was on an average a foot in depth and without reinforcing; the walls were laid up with native rock; and there was no "bond" of the masonry. The concrete-block masonry of walls of the garage was not properly bonded. Some of the lumber which was used in the framework had been sawed from pilings which Riek had salvaged from the Missouri River. A steel beam on which the studding rested was supported by a wooden post in the basement.

Several witnesses for defendant testified they had seen cracks in various parts of plaintiffs' house prior to August, 1955. Two witnesses said they had observed the cracks in 1934 or 1935 while the house was in progress of construction. There was evidence tending to show there was a drought in the area in the summer and fall of 1955. Defendant's experts testified of the effects of weather conditions and improper construction in causing a structure such as plaintiffs' dwelling to "settle" with resultant fissures and cracks in the structure. The experts were of the opinion the vibrations or concussions of the blasts at defendant's quarry could not have occasioned the damage to the improvements. November 8, 1956, a test blast was made at the quarry and the vibratory or undulating or seismic effect of the blast was measured by instruments, including a seismograph, set in operation at plaintiffs' dwelling. The charge of the explosive used in the test blast was said to be comparable to that used in the largest of defendant's "blasting down," rock-penetrating operations at the quarry. It was determined, according to the testimony of defendant's expert witness, that the vibration and concussion of the blast were insufficient to in any way adversely affect or damage the weakest part of the structure of plaintiffs' improvements. Such a vibration was said to be considerably less than that which would be caused by walking on the floor.

The evidence we have detailed shows the factual theories of the parties, plaintiffs and defendant, were divergent only on the cause of the damage to plaintiffs' improvements. Beyond question the improvements were from some cause or causes cracked and broken. Plaintiffs were endeavoring to establish that the damage was due to defendant's blasting operations, and defendant was endeavoring to defensively demonstrate that the damage was not due to its blasting but was due to weather conditions and the inferior construction of the improvements. The instructions (examined infra) given at the request of the parties submitted the parties' conflicting theories on the basic factual issue as to what caused the damage, and, as stated, the jury found for defendant. Now, if the issue of plaintiffs' claim for actual damages as stated in Count I was tried and submitted without prejudicial error, the sustention of defendant's motion for a directed verdict as to Count III could not have been prejudicial to plaintiffs, since punitive damages could have been but incidental to defendant's liability for actual damages. And, furthermore, all contentions of error in the admission and exclusion of evidence on the issue for actual damages and contentions of abuse of discretion in passing on the qualifications of experts whose testimony bore upon that issue could not be prejudicial to plaintiffs. This is because, as stated, the jury found for defendant on the issue of defendant's liability. The jury did not even reach the point of deliberating on the issue of damages. Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366, and cases therein cited; Durmeier v. St. Louis County Bus Co., Mo.Sup., 203 S.W.2d 445; LeGrand v. U-Drive-It Co., Mo.Sup., 247 S.W.2d 706; Morris v. Baggett Transp. Co., Mo.Sup., 306 S.W.2d 445.

▪ Turning now to contentions relating to the admission and exclusion of evidence—plaintiffs had alleged that "on or about August 20, 1955, and on numerous and divers days since," defendant had set off blasts of explosives and produced vibra-

tions and concussions and thereby caused damage to plaintiffs' improvements. On the witness stand, plaintiff husband, in detailing the occasions of blasts and their effect on the senses of "feeling, hearing and seeing," was asked concerning a blast he had noticed during the third week of July, 1955. This testimony was excluded upon defendant's objection that it was immaterial and "it is outside the pleadings in the case." Plaintiffs-appellants contend error in the ruling. Actually, the excluded testimony would have been of an event approximately one month prior to the time pleaded. When used in other connections, we have said the words "on or about" do not put the time at large, but indicate that it is stated with approximate certainty. Crawford v. Arends, 351 Mo. 1100, 176 S.W.2d 1; State v. Armstead, Mo.Sup., 283 S.W.2d 577. See, also, Vol. 29 Words and Phrases, On or About, p. 455 et seq. But if it were to be said that the court was ruling too strictly in sustaining the instant objection, nevertheless, we think the ruling did not materially affect the issue here. Plaintiffs fully developed their case by testimony of vibrations or concussions experienced on and subsequent to August 20th.

▪ Complaint is made that defendant's expert witness, Leet, was permitted to testify of explosions at various parts of the country in no way comparable to those at defendant's quarry, and was permitted to give his opinion of the cause of the damage to plaintiffs' improvements. The witness was a specialist in geology and seismology. His testimony concerning his presence on the occasions of the use of high explosives "at various places in the United States" was limited by the trial court to such answers as "touched upon his qualifications" as a witness. Defendant's witness Wonderlich was an architect and builder of more than thirty-five years' experience. He was permitted to describe the nature of the construction of plaintiffs' improvements which he had inspected, and the effect of time and weather conditions in shrinking, and con-

tracting and expanding materials such as were used in the construction of the house. He did not attempt to qualify as an expert on seismology, but he did express the opinion the "defects" in plaintiffs' buildings were due to "improper, poor and subnormal construction." We have the opinion the trial court did not abuse its discretion in determining the qualifications of these witnesses, and did not err in permitting them to draw factual conclusions from facts known to them or ascertained by inspections or shown in evidence—all within their respective fields of specialization. Their testimony was of assistance to the jury. They possessed knowledge which the jurors could not have acquired in their common experience. An expert necessarily states his conclusions about certain matters. This is proper so long as his opinion is not a mere guess or conjecture, but is based on facts and adequate data. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601. "It has long been settled an expert witness may base a competent opinion upon matters within his personal knowledge or observation, or upon competent evidence in the case, or upon both." Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S.W.2d 780, 782. See, also, Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158, and other cases therein cited.

In instructing the jury, the trial court gave plaintiffs' verdict-directing Instruction A, which hypothesized plaintiffs' ownership of the 22-acre tract and improvements thereon; the location of the property; defendant's operation of the quarry and its location; defendant's use of explosives in displacing earth formations, and continued, "and if you find from the evidence that as a direct and proximate result of the displacement by explosives of the earth material on defendant's land, and as a direct result of the explosives referred to in the evidence, between August 20, 1955 and April 5, 1956 the lands of plaintiffs and the improvements thereon situated were caused to be shocked and vibrated, * * *

and you find from the evidence the plaintiffs' property was damaged thereby, then your verdict shall be for the plaintiffs * * *." The trial court also gave plaintiffs' Instruction B on the measure of damages.

At defendant's request the trial court instructed the jury as follows,

"Instruction No. 1—The Court instructs the jury that the use of dynamite by the defendant is, of itself, a lawful and legitimate means of mining sand."

"Instruction No. 2—The Court instructs the jury that the mere existence or appearance of cracks in the dwelling and garage of plaintiffs, and the separation of the woodwork in the dwelling raises no presumption that the cracks and woodwork separation complained of by plaintiffs were caused by the operations of the defendant at its quarry at Klondike.

"You are instructed that the burden of proof is on the plaintiffs to show by a preponderance or greater weight of the evidence that the defendant's quarry operations were the direct and proximate cause of the cracks and woodwork separation complained of. The law casts no burden on the defendant to disprove any material elements of the plaintiffs' case.

"Therefore, if you find from the evidence that the cracks in the dwelling and garage, and the separation of the woodwork in the dwelling of plaintiffs were caused by the nature of the construction of the dwelling and garage and by the drought, and not by the quarry operations of the defendant, then the verdict of the jury must be in favor of the defendant."

"Instruction No. 3—The Court instructs the jury that in the event you find for plaintiffs, in your consideration of the damages, if any, to which plaintiffs may be entitled, you shall not consider the issue of punitive damages, nor award any such punitive damages to plaintiffs."

Plaintiffs-appellants contend the Instruction No. 1 is misleading and erroneous in omitting the qualification that defendant would be liable for injury or damage inflicted by its blasting operations, and is diametrically opposed to plaintiffs' Instruction A. The instruction (No. 1) correctly but abstractly states that, of itself, dynamite is a lawful and legitimate means of mining sand. Schaefer v. Frazier-Davis Const. Co., supra. The instruction additionally was cautionary in nature. It contained the advice of the fact, which lay jurors might not know, that, in itself, the use of the dangerous explosive, dynamite, in mining was not unlawful. It is true the abstract advice was not qualified as plaintiffs suggest. The qualification was supplied by directing a verdict for plaintiffs upon the finding that as a direct result of the explosives plaintiffs' improvements "were caused to be shocked and vibrated" and "damaged thereby" in plaintiffs' Instruction A. An abstract instruction which does not authorize a verdict for either party is not in all cases prejudicially erroneous. Instructions should be read and considered together and as a whole. While abstract instructions are in disfavor, an objection on that ground is not well taken where the instruction is "accompanied by other instructions properly applying the law to the facts." Gettemeyer v. Thies, Mo.App., 51 S.W.2d 868, 870. See, also, Scheipers v. Missouri Pac. R. Co., Mo.Sup., 298 S.W. 51; Bales v. Kansas City Public Service Co., 328 Mo. 171, 40 S.W.2d 665.

Attending now Instruction No. 2—the instruction does not single out facts and comment on their legal effect, as did plaintiffs' Instruction No. 5 in Kennedy v. Phillips, 319 Mo. 573, 5 S.W.2d 33, cited by plaintiffs-appellants. We see no error or misdirection in the first paragraph of the instruction. However, the use of "mere fact," "mere fact in itself," or, as here, "mere existence" in connection with other language in a given case may be erroneous. Citizens Bank of Festus v. Missouri Natural Gas Co., Mo.Sup., 314 S.W. 2d 709.

Neither do we think the instruction was misleading and prejudicial or "gave the jury a roving commission" in negativing defendant's "quarry operations" as the cause of the cracks and the separation of the woodwork in plaintiffs' dwelling without reference to "vibrations and concussions" as the cause thereof; or in failing to require a finding that drought and the nature of the construction of the dwelling "solely caused" the damage, and that the quarry operation "in nowise directly caused or contributed to cause" the damage. Instruction A authorized a verdict for plaintiffs upon the finding that plaintiffs' lands and improvements were shocked and vibrated as a direct and proximate result of defendant's use of the explosives in the operation of its quarry and that plaintiffs' property "was damaged thereby." And the instruction (No. 2) strictly required the finding that the cracks and separation of the woodwork "were caused" by the nature of the construction and by the drought, "and not by the quarry operations of the defendant."

The omission of the word "credible" before the word "evidence" in the second paragraph of the instruction (No. 2) has been held nondirection, not misdirection. Plaintiffs should have tendered an instruction defining "preponderance or greater weight of the evidence," if they had desired. Quigley v. St. Louis Public Service Co., Mo.Sup., 201 S.W.2d 169. Having advised that plaintiffs had the burden of proving defendant's quarry operations were the direct and proximate cause of the cracks and woodwork separation, the word "therefore," introducing the third paragraph of Instruction No. 2, introduced the consequential effect of a jury finding on the defensive and converse or negative hypothesis submitted in the third paragraph of the instruction. It is noted that Instruction No. 2 concludes with the

clause that the verdict must be in favor of defendant. Although "should" would have been a better word than "must," the use of the word "must" in an instruction correctly requiring a finding of all essential fact issues is not error. King v. Rieth, 341 Mo. 467, 108 S.W.2d 1; Pabst v. Armbruster, Mo.App., 91 S.W.2d 652. Here the essential decisive fact issue was the cause of the damage to plaintiffs' improvements.

Plaintiffs-appellants complain of Instruction No. 3. They say the instruction is outside the issues and is confusing, the trial court having sustained defendant's motion for a directed verdict on Count III. It is true the trial court had sustained defendant's motion for a directed verdict as to Count III at the conclusion of plaintiffs' case, but the trial court had not required the jury to actually return such a verdict. We suppose the trial court gave Instruction No. 3 as a means of effectually eliminating or withdrawing the issue of punitive damages without requiring the jury to actually return a verdict for defendant on Count III. We think plaintiffs were not prejudiced by this method of disposing of the issue. The jury, no doubt, understood the term "punitive damages" was different in its significance to an award to which the jury was told plaintiffs would have been entitled, in the event the jury found for plaintiffs, as measured by plaintiffs' measure of damages Instruction B.

Although we have considered that, in this case, defendant's instructions singly and in combination when read in conjunction with all of the instructions given were not prejudicially misleading, or erroneous, we do not approve them for use in future cases.

■ As we have said, plaintiffs-appellants contend error in finding against defendant on their claim for an injunction stated in Count II. They also say the trial court—the judge thereof sitting as a chancellor—in the separate trial of the issues

of that count, was in error in admitting evidence of the "economic effect" on the community if defendant's quarry operations were restrained. Our examination of the trial court's findings and judgment, however, discloses that the decision on Count II was expressly based on the ground that the plaintiffs had "failed to show by a preponderance of the evidence that the blasting operations of the defendant have caused" plaintiffs' improvements to "have become cracked and broken as alleged." Having examined the evidence transcribed in the whole of the transcript on appeal, including the conflicting evidence as to the issue of the origin or cause or causes of the alleged damage, and having given deference to the trial court's finding on the conflicting evidence relevant to that decisive issue, we hold the trial court's finding and judgment on Count II should be affirmed. And we gratuitously say the trial court's opinion on the weight of the evidence (and our opinion herein upon review) is fortified by the jury's verdict on the same issue.

■ The trial court's judgment concluded with the clause "and said petition is dismissed, with prejudice, and at plaintiffs' costs." We concur with defendant-respondent in saying that, in this case, the trial court's judgment and the dismissal "of this petition could only bar actions based upon alleged wrongful acts which had occurred at or before the filing of this suit."

The judgment for defendant and against plaintiffs on all three counts should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the Court.

All of the Judges concur.