Billy Max **EDIE,** Plaintiff-Appellant,

v.

Roy J. **CARLIN,** Defendant-Respondent.

No. 8184.

Springfield Court of Appeals.

Missouri.

July 17, 1963.

Ellis & Ellis, Cassville, R. A. Ellis, Jr., and B. H. Clampett, of Walker, Daniel, Clampett, Rittershouse & Ellis, Springfield, for plaintiff appellant.

Harold J. Fisher and Russell G. Clark, of Allen, Woolsey & Fisher, Springfield, for defendant respondent.

HOGAN, Judge.

In this automobile accident case, Billy Max Edie had judgment against Roy Carlin on a nine-man jury verdict, and the trial court granted a new trial on the ground that Instruction No. 2, given at plaintiff's request, was confusing and misleading. Plaintiff has appealed. No question is made here of the submissibility of plaintiff's case and a brief statement of the facts will be sufficient.

The accident occurred on March 28, 1961, about 3:00 P.M., on Highway 86 near Wheaton, Missouri. At this point, about one-half mile north of Wheaton, Highway 86 is a two-lane bituminous or blacktop highway running north and south. The traveled portion of the road is 22 feet wide and is divided into east and west (northbound and southbound) lanes by a broken white line. The road is straight, but there is a 12 to 15 foot rise in the road where the highway crosses an abandoned railroad roadbed running (approximately) perpendicular to the highway, just north of the point where the parties' vehicles collided and about one-fourth mile north of Wheaton. This rise obstructs the view of oncoming traffic for both northbound and southbound vehicles for a considerable distance. At the time of the accident, the weather was clear and sunny and the pavement was dry. The plaintiff was driving north and the defendant was driving south. Each was alone in his car. Briefly stated, it was the position of each party that the other was driving in the wrong lane, and as a result they collided head on.

The plaintiff testified, and his evidence tended to show, that immediately before the collision he was driving north, about 40 miles per hour, entirely in the east, or northbound, lane, with the left side of his car about a foot east of the center line. As he approached the crest of the rise ahead, the plaintiff "saw a car coming over the roadbed right in the middle of the road," "coming right towards me." Plaintiff estimated the speed of the oncoming (Carlin) vehicle to be about 60 miles per hour. Plaintiff applied his brakes and turned his vehicle sharply to the right. The Carlin vehicle continued to approach the plaintiff, "coming right straight to my side of the road," without slackening its speed; and, although the plaintiff had turned as sharply as he could and had applied his brakes so that he was traveling northeasterly attempting to avoid the defendant, and his right front wheel was off the pavement on the shoulder at the time of impact, the two automobiles collided head on in the east lane. Other evidence offered by the plaintiff tended to show that the actual point of impact was in the east lane, about 200 feet south of the crest of the rise, where, at the time of collision, the left front part of plaintiff's automobile had fallen onto the pavement, gouging out a lateral groove. Dirt and other debris on the highway also indicated that this had been the point of

collision, and plaintiff's witnesses testified that after the accident, and before the vehicles had been moved, traffic continued to move northward in the west lane. Mr. Edie sustained personal injuries.

The defendant's evidence, on the other hand, indicated that just prior to the accident he was traveling south in his own lane, going about 60 miles per hour; and, as he came over the crest of the rise, he was confronted by the Edie vehicle immediately ahead "plumb to the west side," "right in my path." Mr. Carlin then looked to the right, saw that the road slanted away rather sharply for 12 to 15 feet to his right, and, in defendant's words, "it looked like it'd been suicide to cut my car in there, and there was an opening to the left and I took it." Mr. Carlin therefore "made one quick decision" and, since the left (east) lane was clear and the Edie automobile was "facing" defendant, "coming straight at me," the defendant turned sharply to the east trying to avoid the plaintiff. Mr. Carlin recalled turning to his left "as sharp as he could cut it," but, after the impact occurred, he recalled nothing. The defendant estimated that the Edie automobile had been 120 to 150 feet away when he first saw it and that he had been "practically on top" of the old railroad roadbed before he saw the plaintiff. The defendant also adduced evidence which tended to prove that there was another, and parallel, groove, or "gouge mark," a short distance to the north of the groove identified by the plaintiff; and defendant's evidence indicated that the second or northernmost groove, rather than the one pointed out by the plaintiff, marked the actual point of impact. By means of a series of photograhic exhibits and the testimony of two witnesses who had inspected the scene shortly after the accident, the defendant undertook to show, and his evidence did tend to prove, that there were skidmarks originating in the southbound (west) lane and extending some 47 feet northeasterly (that is, in Mr. Edie's general direction of travel) up to the point where the plaintiff's vehicle left the highway. The estimates made by defendant's witnesses as to the length of the northbound skidmarks and their point of origin varied, but the general effect of defendant's evidence was to show that part of the plaintiff's northbound vehicle had been in the southbound lane and had skidded from the center of the road to the point of impact.

Plaintiff submitted his case to the jury solely upon the defendant's negligence in failing to drive his vehicle upon the right half of the roadway, as required by Section 304.015, subpara. 2.[1] The plaintiff's hypothesis was, very succinctly, that as the plaintiff was driving north in his proper lane, the defendant drove into the northbound lane and collided with him. To counter this submission, the defendant offered, and the trial court gave, Instruction 6, an emergency instruction which, after abstractly advising the jury that it is the duty of a driver of an automobile approaching another to turn to the right, but that in some circumstances a driver approaching an oncoming vehicle may turn to the left to avoid a collision, was as follows:

"* * * In this connection you are further instructed that if you find and believe from the evidence that on the 28th day of March, 1961, on Highway 86 just north of Wheaton, Missouri, the defendant Roy Carlin, was operating his automobile in a southerly direction and on his right hand side of the highway, if you so find, and that as the defendant, Roy Carlin's, automobile came over the crest of the hill or the railroad bed as referred to in the evidence and immediately before the collision between the automobiles operated by the plaintiff and defendant herein, that the defendant, Roy Carlin, saw the automobile being operated by the plaintiff, Billy Edie, in a northerly direction over and along

---

1. All references to statutes and rules, except as otherwise noted, are to R.S.Mo. (1959), V.A.M.S. and V.A.M.R.

Highway 86 on the west side or the left hand side of the highway for the plaintiff, Billy Edie, if you so find, and if you further find and believe that it reasonably appeared to the defendant, Roy Carlin, that he could not, with safety to himself and others, turn his vehicle to the right off of said Highway 86 because of the narrowness of the shoulder and the deep drop-off to his right on said Highway 86, if you so find, and if you further find that it reasonably appeared to the defendant, Roy Carlin, that there would be a collision unless he turned to the left, and acting upon such appearance, he swerved his automobile in that direction, and in doing so did what a person exercising the highest degree of care would have done under similar circumstances, then the defendant, Roy Carlin, was not guilty of negligence and your verdict must be against the plaintiff, Billy *Eide,* on his petition and in favor of the defendant, Roy Carlin, on the plaintiff's petition."

The plaintiff in turn offered, and the trial court gave, Instruction No. 2, which is as follows:

"The Court instructs the jury that if you find and believe from the evidence that immediately prior to the time and place of the collision described in evidence that the defendant failed to drive his automobile on the right or west half of the highway, if so, and that by so failing to drive his automobile on the west half of the highway, if so, the defendant directly and proximately created an emergency and danger of colliding with the automobile driven by the plaintiff, if so, and if you further find and believe from the evidence that the defendant turned his automobile onto his left hand or left half of the highway and into the line of travel of the plaintiff after the emergency and danger of collision arose, if so, then the court instructs you that the defendant is not relieved

from his duty under the law to operate his automobile on his right hand side of the highway and is not entitled to rely upon the defense stated in Instruction No. 6."

The jury, as we have noted, found for the plaintiff by a nine-man verdict, and, subsequently the trial court granted a new trial on the ground that Instruction 2 was confusing and misleading.

On this appeal the plaintiff contends: (1) That because the defendant put the existence of a sudden emergency affirmatively in issue, the plaintiff had a right to instruct the jury that Carlin could not justify his conduct as an act in an emergency if, in fact, he had negligently created the emergency; and (2) that since Instruction 2 merely negatived the application of the emergency doctrine, if the jury found the facts to be as hypothesized in Instruction 2, the trial court erred in granting a new trial. The defendant, on the other hand, seeks to justify the trial court's ruling by maintaining that: a) Instruction 2 erroneously directs the jury not to consider the hypothesized emergency in any event; b) Instruction 2 improperly advises the jury to disregard Instruction 6, citing Morris v. Baggett Transportation Co., Mo., 306 S.W.2d 445, 461; and c) Instruction 2 is misleading and confusing because it requires the jury to find simultaneously that the defendant turned into the oncoming lane both before and after the emergency arose.

 The sole matter before us for review is the trial court's order granting a new trial. Since the trial court specified that the new trial was being granted because Instruction 2 was confusing and misleading, and this is a discretionary ground, Trump v. Ballinger, Mo., 317 S.W.2d 355, 357 [2], we do not determine whether the giving of Instruction 2 would have been reversible error had the motion for new trial been denied. The trial judge who took part in the trial, had the best opportunity to determine the effect of any

error; and, if there are reasonable grounds to hold the instruction misleading, we ordinarily defer to the trial court's ruling in such cases, unless its discretion has been clearly abused or its order is clearly erroneous.[2]

■ As to plaintiff's first line of argument—that he was entitled to negative or counter the existence of an emergency since the defendant had put that matter in issue— we are inclined to agree. It is not necessary for us to go again into the technical aspects of emergency instructions, or the circumstances in which they are properly given; those subjects have already been extensively discussed.[3] Neither the form of Instruction 6 nor its evidentiary basis is directly in question on this appeal. We simply assume that it is sufficient in form and that the evidence justified giving it. However, it is apparent that Instruction 6 is a verdict-directing converse instruction. It does not merely advise the jury that the occurrence of a sudden emergency is a factor to be considered in determining whether the defendant's conduct was negligent toward the plaintiff, as did Instruction 3 in Boatright v. Bruening, 363 Mo. 494, 251 S.W.2d 709, 711, and Instruction 4 in Keely v. Arkansas Motor Freight Lines, Mo., 278 S.W.2d 765, 769–770. Instruction 6, in the present case, undertakes to submit a state of fact the existence of which would wholly exonerate the defendant. In other words, Instruction 6 purports to submit facts shown by the defendant's evidence which would disprove one or more (actually several) of the basic factual elements of the plaintiff's case, and, assuming the evidence supported it, the defendant was entitled to such a submission.[4]

■ The question then arises whether plaintiff was in turn entitled to counter or converse the existence of a sudden emergency as a defensive factor by submitting that Carlin negligently created the emergency. Certainly " * * * [a]n integral part of the doctrine is that the emergency shall not have been caused or contributed to by the one who asserts the emergency. * * *" Scott v. Nash, supra, 355 S.W.2d at 630. While we find no case which holds in direct, precise and unequivocal terms that a plaintiff is always entitled to a counter or converse instruction hypothesizing facts which would negative an essential factual element of the defendant's verdict-directing converse, some cases strongly suggest it.[5] We do not mean to announce any broad general rule; but because the authorities do suggest such a view, and because of the many cases which

2. Stone v. Engler, Mo., 349 S.W.2d 38, 41 [2]; Gaston v. Wabash Railroad Co., Mo., 322 S.W.2d 865, 869–70; Trump v. Ballinger, supra, 317 S.W.2d at 357–58; Jones v. Kansas City, Mo., 243 S.W.2d 318, 321; Venditti v. St. Louis Public Service Co., 360 Mo. 42, 49, 226 S.W.2d 599, 604; Teague v. Plaza Express Co., 356 Mo. 1186, 1192–93, 205 S.W.2d 563, 566; Hensley v. Dorr, Mo., 191 S.W.2d 663, 665. This rule of deference does not apply where the record shows that the instruction was not misleading or fairly demonstrates that the losing party was not deprived of a fair trial. See McCormack v. St. Louis Public Service Co., Mo., 337 S.W.2d 918, 921; Warren v. Kansas City, Mo., 258 S.W.2d 681, 683.

3. See West v. St. Louis Public Service Co., Mo., 357 S.W.2d 69, 72 [4–6]; Scott v. Nash, Mo.App., 355 S.W.2d 626, 630–631; Anno., 80 A.L.R.2d 5, §§ 4, 5 [a], 7, 14, 15 [a], 16, 17, 21, 22, 34, 36, 38, 40 (analyzing Missouri decisions); Anno., 47 A. L.R.2d 6, §§ 3, 17.

4. Dell'Aria v. Bonfa, Mo., 307 S.W.2d 479, 480–81 [1, 2]; Liebow v. Jones Store Co., Mo., 303 S.W.2d 660, 662–63; Dill v. Dallas County Farmers' Exchange No. 177, Mo., 267 S.W.2d 677, 680 [4, 5]; Rose v. St. Louis Public Service Co., Mo., 205 S.W.2d 559, 562; Hermann v. St. Louis Public Service Co., Mo.App., 345 S.W.2d 399, 403 [4, 5]; 1 Raymond, Missouri Instructions, § 40 (Supp.1963, at 22).

5. Jones v. Illinois Terminal R. Co., Mo., 260 S.W.2d 487, 491; Hampton v. Wabash R. Co., 356 Mo. 999, 1009–10, 204 S.W.2d 708, 713; See 1 Raymond, op. cit. § 40 (Supp.1963 at 23); Richardson, Rules Relating to Instructions, 4 Mo.Bar. C.L.E. Series, § 2.2, pp. 22–23.

hold, in one form or another, that a litigant is entitled to have his theory of the case affirmatively submitted by proper instruction within the pleadings and evidence,[6] we conclude that in this case the plaintiff was entitled to a proper counter or converse to Instruction 6, hypothesizing that the defendant, Carlin, in fact negligently created the emergency submitted by Instruction 6.

■ Granting plaintiff's basic premise in giving Instruction 2, we cannot agree with his further argument that Instruction 2 was in no way misleading or confusing because it merely negatived the applicability of the emergency doctrine. The charge should be considered as a whole, and instructions should not be read hypercritically, as plaintiff's cited cases say, but these general considerations do not, in our view, govern this case. We have pointed out at some length that where a litigant seeks to submit his theory affirmatively, he must formulate an instruction which is substantially correct in both substance and form. Anderson v. Welty, supra, n. 6, 334 S.W.2d at 140. Possibly the defendant's first two criticisms of Instruction 2 are hypercritical. We do not consider it probable that a jury would read Instruction 2 to mean that the defendant was not entitled to have the hypothesized emergency considered if they found that he turned left after the emergency arose, for the instruction is conjunctively stated. However, so construed, Instruction 2 does ignore the emergency as a defensive factor, as set out in Instruction 6. Nor do we consider that Instruction 2 has the defect found in Instruction B in Morris v. Baggett Transportation Co., supra, 306 S.W. 2d at 451. Instruction 2 in this case does not tell the jury that they cannot consider Instruction 6 in arriving at their verdict; it merely undertakes to tell them the circumstances in which Instruction 6 would apply.

■ On the other hand, we consider defendant's final suggestion—that Instruction 2 contains inconsistent hypotheses—to be well taken. Essentially, the jury is required to find:

"* * * that the defendant failed to drive his automobile on the right or west half of the highway * * * and that by so failing * * * the defendant directly and proximately *created an emergency and danger of colliding* * * * *and* * * * that defendant *turned* his automobile onto his left hand or left half of the highway and *into the line of travel of the plaintiff after the emergency and danger of collision arose.* * * *"

The instruction thus requires the jury to find affirmatively that the defendant was in the east lane a sufficient distance to create an emergency, and simultaneously requires the jury to find affirmatively that he turned left into the east lane after the emergency arose; in this respect it requires simultaneous affirmative findings of fact which could not, in point of time, co-exist.

Instruction 2 has the same vice as Instruction 8 in Pigg v. Bridges, Mo., (banc) 352 S.W.2d 28, 31 [1], which required the jury to find simultaneously that the plaintiff could have discovered the stairway, and that he could not have discovered the stairway; Instruction 7 in Sanders v. Carl Berry Oil Company, Mo., 359 S.W.2d 769, 771–72, which hypothesized that the alleyway was completely dark, but further hypothesized that plaintiff should have seen the oil and ice in the alley; and Instruction 5 in Thomas v. Kimsey, Mo., 322 S.W.2d 754, 758 [4], which required the jury to find both that the plaintiff was in a position

---

6. Kimbrough v. Chervitz, 353 Mo. 1154, 1162–63, 186 S.W.2d 461, 466; Anderson v. Welty, Mo.App., 334 S.W.2d 132, 139 [14, 15]; Jackson v. Farmers Union Livestock Commission, 238 Mo.App. 449, 465, 181 S.W.2d 211, 219 [8, 9]; Broderick v. Brennan, Mo.App., 170 S.W.2d 686, 688 [4–6]; Collins v. Rankin Farms, Mo.App., 180 S.W. 1053, 1054; 88 C.J.S. Trial § 303, p. 819.

of safety, and that she had left that position before the bus started and slid. In Pigg v. Bridges, supra, 352 S.W.2d at 31, it was pointed out that the conjunctive submission of inconsistent hypotheses, requiring the jury to find two facts which cannot co-exist, is prejudicial misdirection under which a jury cannot properly perform its function. We are aware, as plaintiff contends, that Instruction 2 was not a verdict-directing instruction, but, at the same time, the relative position of the two automobiles on the highway at the time each saw the other was one of the principal matters in issue, and not a mere collateral matter. We cannot confidently say that the error in giving Instruction 2 was so insubstantial that the losing party was in no way deprived of a fair trial. In our view, the trial court was justified in ordering a new trial, and the judgment is therefore affirmed.

RUARK, P. J., and STONE, J., concur.